## ANDERSON v. BALTIMORE & O. R. CO.
### No. 328.

Circuit Court of Appeals, Second Circuit.
April 12, 1937.

Fearey, Allen, Coleman & Johnston, of New York City (Morton L. Fearey and Wm. Paul Allen, both of New York City, of counsel), for appellant.

Harold R. Oakes, of New York City (Robert Schwebel, of New York City, on the brief), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge.

The plaintiff's decedent met his death while employed by the defendant as a fireman on a pusher engine coupled to the rear of an interstate freight train. He was survived by his widow and four children. This action was brought under the Federal Employers' Liability Act (45 U.S.C.A. § 51 et seq.), the wrongful act relied upon being an alleged violation of the Boiler Inspection Act 1924, § 2 (45 U.S.C.A. § 23) and rule 120 of the Interstate Commerce Commission promulgated thereunder requiring locomotives to be "equipped with proper sanding apparatus, which shall be maintained in safe and suitable condition for service and tested before each trip." At the conclusion of the evidence, the District Court directed a verdict for the defendant.

The correctness of this ruling is the sole matter presented by this appeal and it raises two questions: (1) Whether there was any evidence of a violation of the Boiler Inspection Act and rule 120 promulgated thereunder, and (2) whether, if there was, the jury could be permitted to find that such violation was the proximate cause of the fireman's death.

The pusher engine was equipped with a sanding apparatus, consisting of two sandboxes above the boiler, from each of which two pipes of an inch and a half diameter led down, one either side of the engine, to a point two inches above the rail and two inches in front of the forward drive wheel of each set of drivers. Before the trip started the apparatus was tested and found to be working satisfactorily. After having proceeded about thirteen miles to Stanley, a grade was reached on which it was necessary to use the sanders. Here it was found that the apparatus failed to deliver sand to the rails and that the drivers began to slip and spin until finally the train was stalled. There was evidence from which the jury might reasonably infer that before the train had come to a complete stop Anderson got off the engine on the left side and walked forward to the sand pipes for the purpose of tapping them with a pick to get the sand to flow; and that while stooping over to look at one of the pipes he got in the way of an engine of the Erie Railroad coming from the opposite direction around a curve on the adjacent track. He was struck by the pilot beam and instantly killed. After the train had stalled, Cobb, the engineer, tapped a little wet sand from the ends of each of the pipes on each side of the engine, and thereafter the sanders functioned properly to the end of Cobb's run.

█ The defendant contends that, since the evidence shows without contradiction that the sanders worked both before and after the accident, their temporary failure could not have been due to any mechanical or functional defect but resulted from the clogging of the sand at the end of the pipes because of weather conditions. It was a rainy day in July, but the rain was not of unusual or extraordinary severity. When the rails are wet is the precise time when the sanders are needed, and the plaintiff argues persuasively that an apparatus which will become clogged so that it cannot function during an ordinary summer rain does not comply with the rule requiring a "proper sanding apparatus, which shall be maintained in safe and suitable condition for service." The engineer testified that the sand is blown by air from the box through the pipes; that the flow of air is controlled by the operation of valves in the engine cab; and that the valves were wide open from the time the train left Stanley until it stalled. We think that the failure of the apparatus to function when operated in a proper manner and under normal working conditions makes a prima facie case of insufficiency either in the air pressure or in mechanical construction. The doctrine of res ipsa loquitur has frequently been applied to prove, in the absence of explanation, a violation of provisions of the Safety Appliance Acts (45 U. S.C.A. § 1 et seq.). See Spokane & Inland R. Co. v. Campbell, 241 U.S. 497, 505, 36 S.Ct. 683, 60 L.Ed. 1125; Minneapolis & St. Louis R. Co. v. Gotschall, 244 U.S. 66, 67, 37 S.Ct. 598, 61 L.Ed. 995; Philadelphia & R. Ry. Co. v. Eisenhart, 280 F. 271, 275 (C.C.A.3); Didinger v. Pennsylvania R. Co., 39 F.(2d) 798, 799 (C.C.A. 6); Detroit T. & I. R. Co. v. Hahn, 47 F.(2d) 59, 60 (C.C.A.6). The case at bar presents a very different situation from that of grease on a handhold or ice on the running board, as in Ford v. New York, N. H. & H. R. Co., 54 F.(2d) 342 (C.C.A.2). No handhold is made which may not become smeared with grease from greasy hands, and no running board which will not become icy in wet and freezing weather. To be subject to those defects in service raises no inference of insufficiency of either handhold or running board; but a sanding apparatus which will not sand on a wet day in summer, when the valves are open and the sandboxes filled, is no better than none at all. No evidence was presented by the defendant that clogging of the pipes is unavoidable in wet weather, even though the apparatus be in perfect order. On the issue of violation of the Boiler Inspection Act and rule 120 there was evidence enough to go to the jury.

█ The second question is more difficult, namely, whether the defect in the sanders, which the jury might have found to exist, was the proximate cause of Anderson's death. An employee cannot recover for a violation of the statutory duty to provide safety appliances, such as the Boiler Inspection Act requires, unless the failure to comply with the statute is a proximate cause of the accident which results in his injury;

if it merely creates a condition or situation in which the accident happens from other causes, there is no liability. But, if a failure to comply with the requirements of the act is a proximate cause of the accident, resulting in injury to the employee while in the discharge of his duty, he can recover even though not engaged in an operation, in which the safety appliances are specifically designed to furnish him protection. All this was authoritatively settled in Davis v. Wolfe, 263 U.S. 239, 243, 44 S.Ct. 64, 68 L.Ed. 284. See, also, Swinson v. Chicago, St. P., M. & O. Ry. Co., 294 U.S. 529, 55 S.Ct. 517, 79 L.Ed. 1041, 96 A.L.R. 1136. Whether in a given case the statutory violation is to be deemed the proximate cause, or merely a condition, of the accident is often a troublesome problem, and it is impossible to harmonize all of the many decisions on the subject. The defendant argues that Anderson's own act in placing himself in a position of danger where he would be struck by the Erie engine was the proximate cause of his death, and the defect in the sanders only a remote cause or condition of the accident. But the jury might reasonably find from the evidence that he had taken this position in an effort to remedy the defect and get the sand to flow before his slowly moving train should come to a complete stop, and that his conduct was a normal reaction to the stimulus of a situation created by the defendant's violation of its statutory duty. Granting that he was negligent in not observing the approaching engine, his contributory negligence does not preclude recovery in an action based on violation of the statutory duty, unless his act can be deemed a new and superseding cause of the accident. It is not considered as such when it is a normal reaction to the situation created by the defendant's wrong. New York Cent. R. Co. v. Brown, 63 F.(2d) 657 (C.C.A.6) certiorari denied 290 U.S. 634, 54 S.Ct. 52, 78 L.Ed. 551; Chicago, M., St. P. & Pac. R. Co. v. Goldhammer, 79 F.(2d) 272 (C.C.A.8), certiorari denied 296 U.S. 655, 56 S. Ct. 382, 80 L.Ed. 467; Phillabaum v. Lake Erie & W. R. Co., 315 Ill. 131, 145 N.E. 806; American Law Institute, Restatement, Torts, § 443. The case of Reetz v. Chicago & E. R. Co., 46 F.(2d) 50 (C.C.A.6), is distinguishable on its facts from the case at bar, and was said in the Brown Case, supra, not to conflict with the rule of causation there applied. Under this rule we think the issue of proximate cause should have been submitted to the jury. Minneapolis, etc., Ry.

Co. v. Goneau, 269 U.S. 406, 46 S.Ct. 129, 70 L.Ed. 335, supports this view. There a train broke in two upon a bridge, due to a defective coupling. A brakeman attempted to lift the coupler into operative position, and while so doing lost his balance and fell from the bridge. It was held that there was substantial evidence that the defective coupler was a proximate cause of the accident and that the case was rightly submitted to the jury. See, also, Chicago, G. W. R. Co. v. Schendel, 267 U.S. 287, 45 S.Ct. 303, 69 L.Ed. 614. The case of Thomas v. Maine Central R. Co., 127 Me. 466, 144 A. 212, certiorari denied 279 U.S. 835, 49 S.Ct. 254, 73 L.Ed. 983, appears to support the defendant's contention; but with all respect, in so far as it does, we are unable to agree with it.

For the foregoing reasons we think it was error to direct a verdict for the defendant. Accordingly the judgment is reversed and the cause remanded.