SMITH, Judge.
This is an appeal by Hendrick, an injured brakeman, from the trial court’s dismissal of his causes of action under the Federal Safety Appliance Act (SAA), 45 U.S.C.A. §§ 2 and 9, and the Boiler Inspection Act (BIA), 45 U.S.C.A. § 23, and from the entry of a directed verdict for the railroad in his negligence action under the Federal Employers’ Liability Act (FELA), 45 U.S.C.A. § 51 et seq. We reverse.
On March 7, 1986, Hendrick, a brakeman for the railroad, was part of a four-man crew moving a freight train consisting of 131 cars and weighing 11,000 tons. The lead engine was slipping and surging and when the train attempted to ascend a steep grade, Peachland Hill, in North Carolina, a coupling mechanism, or “knuckle” between two of the cars broke. The separation of the train caused the emergency braking system to activate, stopping the train. The broken knuckle was replaced with a spare knuckle. Ordinarily, the train would have been doubled (split in half and taken over the hill in two sections), but because there was another train occupying the siding which would have normally been used to effect a doubling of the train, the conductor and the engineer decided to try to pull the entire train up the hill again. However, upon release of the brakes, the train started sliding backwards down the hill, two additional knuckles broke, and the emergency braking system activated again. This time, it was Hendrick who attempted to replace the knuckle. While carrying the 80 pound knuckle up the ballasted slope beside the track, apparently Hendrick lost his footing in the ballast, slipped and injured his back. Later, the engine was doubled and taken over the hill.
Hendrick filed a four count complaint alleging negligence under FELA,[1] absolute liability for a defective engine in violation of the BIA,[2] and absolute liability for defective coupling devices and defective emergency braking system under SAA.[3] The railroad moved to dismiss all four counts, but only the counts alleging violations of the BIA and SAA were dismissed. The trial court reasoned that the defective engine and/or brakes and/or coupling devices merely created a condition to which Hendrick was called to respond and, in essence, the conditions were not the proximate cause of Hendrick’s injuries. The negligence count proceeded to a jury trial.
*711 At the trial, an expert engineer testified that a turbo charger that is surging on a lead locomotive is a reportable defect for that locomotive and that the surging and slipping of the engine in this case was a part or factor in the train breaking apart. Other causes for a train separation include too much tonnage for the train, a weak coupling or knuckle,[4] or mishandling the train. There was testimony that after the first separation, and given the conditions of Peachland Hill, the train should have been doubled. When it was not, it was foreseeable that the train would separate again once the brakes were reactivated.
At the close of Hendrick’s evidence, the railroad moved for a directed verdict which the trial court granted. The trial court found that Hendrick had failed to introduce evidence of the railroad’s failure to provide a safe workplace or adequate equipment during the knuckle changing process. The trial court ruled it was not sufficient for Hendrick to show that the situation he was responding to was caused by the negligence of the railroad. The trial court reasoned that even, if there was an engine malfunction, and assuming it caused the train separation, there was no legal causal relationship between the engine malfunction and Hendrick’s injury. Further, he found no causal relationship, even assuming the knuckle failure and that the decision to attempt to take the train over Peachland Hill without doubling it, after the first knuckle failure, was a negligent one. The trial court ruled that for Hen-drick to recover, he was required to show that some railroad negligence existed in the knuckle changing procedure itself.
The United States Supreme Court’s landmark decision on causation in FELA cases is Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957), a ease in which a railroad employee, who was burning weeds alongside his employer’s tracks, had been instructed to observe passing trains for “hotboxes.” Accordingly, the employee took up a point near a culvert in order to observe a passing train. The passing train fanned flames from the burning weeds, and the employee retreated and fell from the top of the culvert. The jury returned a verdict in favor of the plaintiff but the Missouri Supreme Court reversed. In reversing the Missouri Supreme Court, the United States Supreme Court set forth the test of whether there is a jury question of employer’s negligence as follows:
Under this statute, the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee’s contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities. The statute expressly imposes liability upon the employer to pay damages for injury or death due “in whole or in part” to its negligence.
The law was enacted because the Congress was dissatisfied with the common-law duty of the master to his servant. The statute supplants that duty with the far more drastic duty of paying damages for injury or death at work due in whole or in part to the employer’s negligence. The employer is stripped of his common-law defenses and for practical purposes the inquiry in these cases today rarely presents more than the single question whether negligence of the employer *712 played any part, however small, in the injury or death which is the subject of the suit. The burden of the employee is met, and the obligation of the employer to pay damages arises, when there is proof, even though entirely circumstantial, from which the jury may with reason make that inference.
[[Image here]]
The kind of misconception evidenced in the opinion below, which fails to take into account the special features of this statutory negligence action that make it significantly different from the ordinary common-law negligence action, has required this Court to review a number of cases. In a relatively large percentage of the cases reviewed, the Court has found that lower courts have not given proper scope to this integral part of the congressional scheme. We reach the same conclusion in this case. The decisions of this Court after the 1939 amendments teach that the Congress vested the power of decision in these actions exclusively in the jury in all but the infrequent cases where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee’s injury. Special and important reasons for the grant of certiorari in these cases are certainly present when lower federal and state courts persistently deprive litigants of their right to a jury determination.
352 U.S. at 506-7, 509-10, 77 S.Ct. at 448-49, 450.
Thus, the proper question becomes whether the employer’s negligence played a part, however small, in producing Hen-drick’s injury. It is clear, therefore, that the trial court erred in focusing on concepts of proximate cause and whether the railroad’s negligence merely created a condition or situation to which the employer was required to respond. McCalley v. Seaboard Coast Line Railroad Co., 265 So.2d 11 (Fla.1972); see also Lively v. CSX Transportation, Inc., 557 So.2d 210 (Fla. 2d DCA), rev. denied, 564 So.2d 1085 (Fla.1990).
With regard to Hendrick’s causes of action under the SAA and BIA, the cases clearly hold that it is the railroad’s use of defective equipment which results in liability when injury is caused, in whole or in part, from the railroad’s violation of statutory safeguards. Coray v. Southern Pacific Co., 335 U.S. 520, 69 S.Ct. 275, 93 L.Ed 208 (1949); Minneapolis, St. Paul & Sault Ste. Marie Railway Co. v. Goneau, 269 U.S. 406, 46 S.Ct. 129, 70 L.Ed. 335 (1926); Chicago, M. St. P. & Pac. R. Co. v. Goldhammer, 79 F.2d 272 (8th Cir.1935) cert. denied, 296 U.S. 655, 56 S.Ct. 382, 80 L.Ed. 467 (1936); McCalley v. Seaboard Coast Line Railroad Co., 265 So.2d 11 (Fla.1972); and Seaboard Coast Line Railroad Co. v. Jackson, 256 So.2d 568 (Fla. 1st DCA 1971).
The jury could have determined that the railroad operated its train with a defective engine and defective couplings, and negligently failed to double its train in order to ascend Peachland Hill; and that without this defective equipment and railroad negligence, Hendrick would never have been required to lift the 80 pound knuckle and been injured. Thus, the trial court erred in directing a verdict for the railroad on Hendrick’s negligence count, and in dismissing the remaining counts of the complaint.[5]
REVERSED.
BOOTH and ZEHMER, JJ., concur.

. 45 U.S.C.A. § 51 provides in pertinent part: "Every common carrier by railroad while engaging in commerce between any of the several States ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or in case of death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed ... or other equipment....”

. 45 U.S.C.A. § 23 provides in pertinent part: "It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb, ...”

.45 U.S.C.A. § 2 provides as follows:
"It shall be unlawful for any common carrier engaged in interstate commerce by railroad to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers, coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars.”
45 U.S.C.A. § 9 provides in pertinent part:
"Whenever, as provided in sections 1 to 7 of this title, any train is operated with power or train brakes not less than 50 per centum of the cars in such train shall have their brakes used and operated by the engineer of the locomotive drawing such train; and all power-braked cars in such train which are associated together with said 50 per centum shall have their brakes so used and operated; ....

. Even though 45 U.S.C.A. § 2, read literally, only requires that couplers couple automatically and uncouple without men going between cars, it has been held that a knuckle which breaks in use for any reason is considered legally defective under the SAA. O’Donnell v. Elgin, Joliet & Eastern Railway Co., 338 U.S. 384, 70 S.Ct. 200, 94 L.Ed. 187 (1950).

. We have considered, and have rejected, appel-lees res judicata argument with respect to counts II, III and IV of the complaint (Based on BIA and SAA violations). After dismissal of amended counts II, III and IV, with prejudice, and appellant’s attempt to again amend as to those counts was denied, appellant filed a notice of voluntary dismissal, and thereafter refiled his complaint, containing the same four counts. Although the order appealed does not address the res judicata argument, appellee argued below, and here, that the earlier dismissal, which *713 was not appealed, operated as a bar to the refiling of counts II, III and IV. We agree with appellant that since counts II, III and IV are factually interrelated with count I, which was not dismissed, the order dismissing these counts was an interlocutory order, not a final order capable of being appealed. See S.L.T. Warehouse Co. v. Webb, 304 So.2d 97 (Fla.1974); Odham v. Mouat, 484 So.2d 95 (Fla. 1st DCA 1986). See also, Green v. River Terminal Railway Co., 763 F.2d 805 (action for violation of BIA is prosecuted as an action under FELA); McCarthy v. Pennsylvania R. Co., 156 F.2d 877 (BIA and FELA are in pari materia and must be construed together).