RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0159P (6th Cir.)
File Name: 03a0159p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

HONAS H. RICHARDS,
        *Plaintiff-Appellant,*

v.                                    No. 01-4130

CONSOLIDATED RAIL
CORPORATION,
        *Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 00-00321—Edmund A. Sargus, Jr., District Judge.

Argued: March 12, 2003

Decided and Filed: May 28, 2003

Before: MARTIN, Chief Circuit Judge; ROGERS, Circuit
Judge; EDMUNDS, District Judge.*

_____

**COUNSEL**

**ARGUED:** Lawrence A. Katz, COFFEY & KAYE, Bala
Cynwyd, Pennsylvania, for Appellant. Craig R. Carlson,

---

* The Honorable Nancy G. Edmunds, United States District Judge for
the Eastern District of Michigan, sitting by designation.

PORTER, WRIGHT, MORRIS & ARTHUR, Columbus,
Ohio, for Appellee. **ON BRIEF:** Lawrence A. Katz,
COFFEY & KAYE, Bala Cynwyd, Pennsylvania, for
Appellant. Craig R. Carlson, David W. Orlandini, PORTER,
WRIGHT, MORRIS & ARTHUR, Columbus, Ohio, for
Appellee.

_____

**OPINION**

_____

NANCY G. EDMUNDS, District Judge. This appeal arises
from the district court's grant of summary judgment for
defendant-appellee Consolidated Rail Corporation ("Conrail")
in this action filed under the Federal Safety Appliances Act
("FSAA"), 49 U.S.C. §§ 20301-20306, the Federal Employee
Liability Act ("FELA"), 45 U.S.C. §§ 51-60, and the Federal
Boiler Inspection Act ("BIA"), 49 U.S.C. §§ 20701-20703.
Plaintiff-Appellant Honas Richards ("Richards") challenges
the district court's dismissal of his FSAA claim,[1] arguing that
the court erred in finding that he failed to produce sufficient
evidence of a defective appliance and that this defect caused
his injuries. Because we find that Richards produced
sufficient evidence to survive summary judgment on the issue
of the defect and because we find that this court's holding as
to causation in *Reetz v. Chicago & Erie Railroad Co.*, 46 F.2d
50 (6th Cir. 1931) has been called into question by the United
States Supreme Court's holding in *Rogers v. Missouri Pacific
Railroad Co.*, 352 U.S. 500 (1957), and never clarified, we
reverse and remand.

Richards began working for Conrail in 1953. He became
a conductor in 1957 and was working in that position on
May 1, 1999. On that date, Richards and a co-worker were

---

[1] The district court summarily dismissed Richards' FELA and BIA
claims as well; however, he does not appeal those portions of the court's
decision.

responsible for taking a freight train with approximately ninety cars from Columbus, Ohio, to Cincinnati, Ohio.

Approximately thirty minutes after leaving Columbus, the train unexpectedly stopped as a result of an automatic emergency application of the air braking system. In such a situation, the conductor must attempt to determine the cause of the undesired brake application. This is done by "walking the train"– i.e. getting off the train, walking its length, and inspecting for visible causes. After placing an emergency radio call to the dispatcher, Richards climbed down from the train and began his inspection.

Richards walked east alongside the train on the ballast, stopping occasionally to inspect underneath the cars. At some point, he lost his footing and allegedly injured his back. Richards waited until the pain in his back subsided and then he completed his inspection.

Richards did not observe any defects during his inspection that would have caused an emergency brake application – for example, an air hose leak, car derailment, or "shift in loads." Based on his experience and training, Richards therefore concluded that the stop must have been caused by a defective control valve, commonly referred to as a "kicker." Each freight car equipped with a brake has an internal valve that controls the amount of air that is depleted to activate the brake system. Obviously if this valve is located inside the brake mechanism, Richards could not visibly inspect it when he walked the train. As Richards explained,

My examination eliminated everything except a defective control valve. There had to be a reason, and there was no reason - - normal reasons are like busted air hoses where the air escapes into the atmosphere. Train brakes apply when air is taken away from the system not when it's put in. When you put it in, the brakes release. When you take it away, the brakes apply.

And so there had to be some - - since there was [sic] no leaks and I walked that whole thing . . . So based on my

experience and what I've been taught in these classes, the only reasonable explanation was a defective control valve, a kicker.

The district court granted Conrail's motion for summary judgment, finding as to Richard's FSAA claim that he failed to provide sufficient evidence to prove that the braking system was defective. After reviewing the evidence, specifically the transcript from Richard's deposition, the court concluded that Richards only could "opine[]" that the stop was caused by a defective control valve. The court also concluded that, even upon proof of a defective appliance, Richards could not demonstrate that his injury was causally linked to the allegedly defective appliance. Relying primarily upon this court's opinion in *Reetz*, the district court held that the defective control valve did not cause Richard's injury; rather, his injury merely was an incidental condition of the defect. The trial court explained,

Plaintiff's slip while walking the track was only incidentally caused by the alleged appliance violation; the injury was not the 'direct or efficient' cause of any alleged appliance violation. As in *Reetz*, although Plaintiff would not have been walking the track to inspect but for the allegedly defective appliance, his subsequent slip and injury bears too tenuous a connection with the defective appliance so as to give rise to liability.

## I. Standard of Review

We review *de novo* a district court's order granting summary judgment, viewing all the evidence and inferences therefrom in a light most favorable to the nonmoving party. *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001)(citations omitted). The moving party must show the absence of a genuine issue of material fact, and the nonmoving party must then come forward with specific facts showing that there is a genuine issue for trial. *Id*.

## II.   Analysis

The FSAA imposes an absolute duty on railroads to provide and maintain certain safety appliances, including power braking systems. *Myers v. Reading Co.*, 331 U.S. 477, 485 (1947); *O'Donnell v. Elgin, J. & E. Ry. Co.*, 338 U.S. 384, 390 (1949). To recover for a violation of the FSAA, therefore, plaintiffs need only show (1) the statute was violated; and (2) they suffered injuries "resulting in whole or in part" from the defective equipment. *Coray v. S. Pac. Co.*, 335 U.S. 520, 524 (1949).

### A.   Proof of a Defective Appliance

There are two recognized methods of showing that an appliance was defective: "'Evidence may be adduced to establish some particular defect, or the same inefficiency may be established by showing a failure to function, when operated with due care, in the normal, natural, and usual manner.'" *Myers*, 331 U.S. at 483 (quoting *Didinger v. Pennsylvania R.R. Co.*, 39 F.2d 798 (6th Cir. 1930)). As the *Myers* Court elaborated, "Efficient means adequate in performance; producing properly a desired effect. Inefficient means not producing or not capable of producing the desired effect; incapable; incompetent; inadequate." *Id*. If the plaintiff demonstrates a defect using the second method, he or she need not show an actual break or visible defect. *Id*. If the plaintiff establishes that the appliance functioned inefficiently at the relevant time, it is irrelevant that the appliance worked efficiently both before and after the occasion. *Id*.

Thus in *Didinger*, where the plaintiff demonstrated that he firmly set a hand brake which immediately gave way and failed to hold, this court held that it was not necessary for the plaintiff to show the specific reason why the brake failed:

Assuming the proper setting of the [hand] brake, the fact that it did not hold demonstrates its inefficiency. As said in [*Philadelphia & R.R. Ry. Co. v. Auchenbach*, 16 F.2d 550, 552 (3d Cir. 1926)]: 'The test of the observance of this duty (under the Safety Appliance Act) is the

performance of the appliances,' and it was not necessary for the plaintiff to show whether this failure to function was due to the fact that the ratchet broke loose from the brake staff, that the ratchet teeth were worn, that the dog or its rocker pivot broke, that there was too much vertical play between dog and ratchet . . . or any other precise defect [*Minneapolis & St. Louis R.R. Co. v. Gotschall*, 244 U.S. 66 (1917)]. If the brake was properly set, as asserted, some defect must have been latent in it. Otherwise it would have held.

*Didinger*, 39 F.2d at 799. As *Didinger* suggests, plaintiffs may rely on the doctrine of *res ipsa loquitur* to prove their FSAA claims. *Id*.; *see also Myers*, 331 U.S. at 483-84 (holding that conductor's testimony that brake wheel did not function like ordinary wheel and that it suddenly "kicked back" and knocked him to ground was sufficient to make an issue for the jury as to whether brake was defective); *Anderson v. Baltimore & O.R. Co.*, 89 F.2d 629, 630 (2d Cir. 1937)(finding that "the failure of the [sanding] apparatus to function when operated in a proper manner and under normal working conditions makes a prima facie case of insufficiency either in the air pressure or in mechanical construction. The doctrine of res ipsa loquitur has frequently been applied to prove, in the absence of explanation, a violation of provisions of the Safety Appliance Act.") Trial judges should not rule out plaintiffs' opinions as to why appliances functioned inefficiently, where the plaintiffs' opinions are based on their experience and perceptions at the time of their accident. *See Fritts v. Toledo Terminal R.R. Co.*, 293 F.2d 361, 363-64 (6th Cir. 1961)(holding that trial judge improperly ruled out plaintiff's opinion, based on his experience working for the railroad, that lurching of the engine was due to a worn frog); *see also Myers*, 331 U.S. at 483 (holding that the plaintiff's testimony as to the inefficiency of the appliance "is such substantial evidence of inefficiency as to make an issue for the jury").

Here, the district court held that Richards failed to present evidence of a particular defect with the train's air braking

system. Richards testified, however, that based on his experience and training and his visual inspection of the train following the emergency stop, that the stop "must have been" caused by a defective control valve. Although Richards may not have emphatically expressed his assessment of the cause of the stop at his deposition, a jury could conclude that he was stating more than a mere assumption, as the district court characterized his testimony.

## B. Causation

Turning to the second and final element of a plaintiff's FSAA claim– that is, whether the alleged defect caused the plaintiff's injury– the Supreme Court announced a relaxed test for establishing causation in FELA cases in its landmark decision, *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500 (1957).[2] The *Rogers* Court set forth the following test to determine whether there is a jury question on this issue:

Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to

---

[2] Although *Rogers* was a FELA case, its holding on causation applies to FSAA and BIA claims as well. *See Urie v. Thompson*, 337 U.S. 163 (1949)(holding that the FSAA and BIA are substantially, if not in form, amendments to FELA; they dispense, for purposes of employees' suits, with necessity of proving that violations of the safety statutes constitute negligence; statutes should be read and applied together).

find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities. The statute expressly imposes liability upon the employer to pay damages for injury or death due 'in whole or in part' to its negligence.

*Rogers*, 352 U.S. at 506-07. Under this standard, the role of the jury is significantly greater in FELA cases than in common law negligence actions. *Eggert v. Norfolk & W. Ry. Co.*, 538 F.2d 509, 511 (2d Cir. 1976)(citations omitted). As this court has explained, *Rogers* requires a plaintiff alleging a FELA violation to offer "more than a scintilla of evidence in order to create a jury question on the issue of employer liability, but not much more." *Aparicio v. Norfolk & W. Ry. Co.*, 84 F.3d 803, 810 (6th Cir. 1996).

The *Rogers* Court adopted this relaxed standard in order to effectuate Congress' intent when it amended FELA in 1939 "to preserve the plaintiff's right to a jury trial." *Green v. River Terminal Ry. Co.*, 763 F.2d 805, 806 (6th Cir. 1985). As the Supreme Court explained,

The Congress when adopting the law was particularly concerned that the issues whether there was employer fault and whether that fault played any part in the injury or death of the employee should be decided by the jury whenever fair-minded men could reach these conclusions on the evidence.

*Rogers*, 352 U.S. at 508. In other words, the *Rogers* Court found "that the Congress vested the power of decision in these actions exclusively in the jury in all but the infrequent cases where fair-minded jurors cannot honestly differ . . .." *Id.* at 510.

Prior to *Rogers*, several courts analyzed the issue of causation by distinguishing situations where the defective appliance was "the cause of or the instrumentality through which the injury [was] directly brought about" from instances where the defect merely was incidental in creating the condition in which the plaintiff was injured. *See, e.g., Reetz*,

46 F.2d at 52. In *Reetz*, a conductor was killed after the train on which he was riding went into an emergency stop due to defective couplers. It was dark at the time, and some of the train's cars stopped on a bridge. The conductor and the train's brakeman began to walk the train in order to identify the cause of the stop and repair any defect. As the conductor walked alongside the cars stopped on the bridge, he fell to his death. The brakeman was on the other side of the train and so he did not see what the conductor was doing when he fell. The trial court directed a verdict for the railroad, finding that the conductor's fall from the bridge was not directly caused by the defective appliance; instead, the defect merely created the condition whereby the conductor happened to be at the place where he was injured. *Id*. at 51-52. Upholding the district court's decision, this court stated:

> [A]t least in those cases where there has been a failure of a required appliance, there is liability only where the failure of the appliance not only creates a condition under which, or an incidental situation in which the employee is injured, but where the defective appliance is itself an efficient cause of or the instrumentality through which the injury is directly brought about.

*Id*. at 52.

As the district court relied on this incidental situation versus instrumentality distinction to decide the present matter, this court must determine whether *Reetz* still is applicable to decide causation in FSAA cases following *Rogers*. This court has addressed this issue since *Rogers* but not consistently. In some cases the court has applied *Reetz*; in other cases the court has held that *Reetz'* distinction no longer is appropriate. *See, e.g., Hausrath v. New York Cent. R.R. Co.*, 401 F.2d 634 (6th Cir. 1968)(relying on *Rogers* and adopting a more relaxed standard of causation than *Reetz*); *Black v. Penn Cent. Co.*, 507 F.2d 269 (6th Cir. 1974)(acknowledging *Rogers*, but relying on *Reetz* to hold that the defective appliance was not

a "contributory proximate cause" of the plaintiff's injuries);[3] *Green*, 763 F.2d at 810 (relying on *Reetz* to find that the defective appliance at best only created an incidental condition in which the plaintiff was injured). In none of the cases declining to apply *Reetz'* distinction, however, has the court overruled that decision. Courts in other jurisdictions, however, specifically have rejected *Reetz* in cases similar to the present matter. *See New York, New Haven & Hartford R. Co. v. Leary*, 204 F.2d 461 (1st Cir. 1953); *Warning v. Thompson*, 249 S.W.2d 335 (Mo. 1952).

*Leary* presented a factual scenario similar to *Reetz*: a conductor, walking alongside a train at night after it went into an emergency stop due to defective air brakes, fell from a bridge on which some of the train's cars had stopped. The trial court denied the railroad's motion for a directed verdict and, after a jury returned a verdict for the plaintiff, motion for judgment notwithstanding the verdict. *Leary*, 204 F.2d at 462. The First Circuit Court of Appeals upheld the lower court's decisions on the motions, concluding that there was sufficient evidence for a jury reasonably to find that the conductor's fall "was within the risk created by the defective air brake." *Id*. at 467. The *Leary* court rejected *Reetz*, finding this court's reasoning "unpersuasive." *Id*. at 466. The court explained:

> Defective brakes create a number of hazards, depending on the circumstances under which they operate. The danger is not confined merely to the likelihood that a sudden stop or a failure to stop might produce a collision or a severe jolt. In the instant case the danger also

---

[3] Judge McCree, dissenting on another issue in *Black*, agreed that there was no evidence that the defective appliance was a causal factor in the plaintiff's injury; however citing *Rogers*, Judge McCree noted that it was "unnecessary and erroneous" for the majority to focus on proximate cause. *Black*, 507 F.2d at 272 (McCree, J., dissenting). Judge McCree interpreted *Rogers* as making clear that "in adopting the language 'resulting in whole or in part,' the Congress intended to depart from the language of proximate causation . . ." *Id.*

consists in the fact that a sudden stop in the night exposed the employees to other hazards. Among these hazards are bad weather, faulty road bends, and an unperceived trestle.

*Id.* The court reasoned that once the train stopped, it became the conductor's duty to discover and repair whatever caused the stop, and he was injured in his performance of this responsibility. *Id.* at 467. The court concluded that "'Foreseeability does not mean that the precise hazard or the exact consequences which were encountered should have been foreseen.'" *Id.* (quoting James and Perry, *Legal Cause*, 60 Yale L.J. 761, 797 (1951)).

In *Warning*, a railroad engineer was injured while climbing up the front of a locomotive in order to reach and repair part of a defective sanding apparatus. *Warning*, 249 S.W.2d at 337. There was evidence that this was the customary and required method for reaching and fixing the defective part. *Id.* The pilot on the locomotive, however, was wet and the engineer slipped and fell. *Id.* After the jury returned a verdict in favor of the plaintiff, the defendant appealed, arguing in part that the defective appliance was not the proximate cause of the engineer's injuries and that the trial court's instruction on causation was improper. *Id.* at 340.

The trial court in *Warning* had submitted causation to the jury by requiring these findings:

the failure of the sanders to function "was the cause of plaintiff being where he was when he fell; . . . he fell while getting onto or trying to get onto" the pilot; "he was going up to get to the sand traps to do work to get sand to go out of the sand traps and onto the rails by use of the air valve in the cab"; the failure of the sanding apparatus to function and his going up to get to the traps to get the sand to flow subjected him to a peril that would have been unnecessary if, when he used the air valve in the cab, the traps would have functioned.

*Id.* at 340-41. On appeal, the Missouri Supreme Court held that there was a "direct causal connection between the failure of the sanders to function and plaintiff's injuries, and that the instruction was a proper submission of that issue." *Id.* at 341.

The *Warning* court acknowledged the factual similarity between the case before it and *Reetz* but concluded that the connection between the defective appliance and the plaintiff's injury was not as one-sided as the *Reetz* court concluded. *Id.* Quoting from the Second Circuit Court of Appeals' decision in *Anderson*, a case which also involved a similar factual scenario,[4] the *Warning* court explained:

Whether in a given case the statutory violation is to be deemed the proximate cause, or merely a condition, of the accident is often a troublesome problem, and it is impossible to harmonize all of the many decisions on the subject. The defendant argues that [the plaintiff's] own act in placing himself in a position of danger where he would be struck by the Erie engine was the proximate cause of his death, and the defect in the sanders only a remote cause or condition of the accident. *But* the jury might reasonably find from the evidence that he had taken this position in an effort to remedy the defect and get the sand to flow . . . and that this conduct was a normal reaction to the stimulus of a situation created by the defendant's violation of its statutory duty.

*Id.* (quoting *Anderson*, 89 F.2d at 630)(emphasis added). In other words, the *Warning* court concluded, a jury could find that the "[p]laintiff's presence at the place where he fell was no 'mere occasion,'" as "his duties required him to be at that place, and his injury was the direct result of the failure of the sanders to function." *Id.* Because the evidence could be interpreted in more than one way, the court concluded that the issue of causation should be decided by the jury.

---

[4] In *Anderson*, a fireman was struck and killed by a passing engine while bending over to examine the pipes of the train's sanding apparatus which had failed to deliver sand to the rails. *Anderson*, 89 F.2d at 630.

At least one other court has applied the same rationale to conclude that the issue of causation should have been submitted to the jury in a case factually similar to the one before this court. *See Hendrick v. CSX Transp., Inc.*, 575 So.2d 709 (Fla. Dist. Ct. App. 1991). In *Hendrick*, a brakeman was riding on a train that went into an emergency stop after two coupling mechanisms, or "knuckles," broke. *Hendrick*, 575 So.2d at 710. The brakeman was responsible for replacing the broken knuckles. While carrying a new knuckle up the ballasted slope beside the track, the brakeman lost his footing, slipped, and injured his back.

The trial court directed a verdict for the railroad, holding that the broken knuckles merely created the situation to which the brakeman was responding when he was injured. *Id*. at 711. The appellate court reversed, holding that "the trial court erred in focusing on concepts of proximate cause and whether the railroad's negligence merely created a condition or situation to which the employer [sic] was required to respond." *Id*. at 712. The court reasoned that the jury could have found that but for the defective equipment, the brakeman never would have been required to replace the knuckle and been injured. *Id*.

As the *Warning* court noted, determining in a given case whether an alleged defect is the proximate cause or merely a condition of the plaintiff's injury is often a troublesome matter; as a result, courts often reach different conclusions on the issue of causation when faced with factually similar scenarios. Here, applying *Reetz*, the district court concluded that Richards' losing his footing on the ballast was only incidental to the defect which he was attempting to identify. As other courts have recognized, however, a jury might reasonably have concluded that Richards only was injured because the braking system failed to function properly, it was his duty to identify and remedy the defect, and the proper method for fulfilling his responsibilities was walking the train. *Rogers* makes clear that where the evidence allows more than one outcome on the issue of causation, the issue

should be decided by a jury, not a judge. *Rogers*, 352 U.S. at 506-07.

We now join those courts that have rejected *Reetz* in light of *Rogers* and hold that *Reetz* no longer is good law. Courts in FSAA cases (and FELA and BIA cases as well) should focus on whether a reasonable jury could conclude that the defective appliance played *any* part, even the slightest, in bringing about the plaintiff's injury. This means that if a reasonable jury could find that the plaintiff's injury "was within the risk created by" the defective appliance, the plaintiff's right to a jury trial should be preserved. For example, if as a result of a defective appliance a plaintiff is required to take certain actions and he or she is injured while taking those actions, the issue of causation generally should be submitted to a jury.[5]

### III. Conclusion

As the evidence indicates that air brakes only go into an emergency stop due to an actual emergency (which was not present here), application by someone on the train (also absent), or some defect, we find that the trial court erred in holding Richards' testimony insufficient to demonstrate a question of material fact on the issue of whether the appliance was defective. We find that the district court erred in failing to submit the issue of causation to a jury as well. The district court relied on *Reetz* in analyzing the issue of causation; however that case is no longer good law in light of *Rogers*. For these reasons, we REVERSE the judgment of the district

---

[5]Admittedly scenarios will arise where the connection between the defective appliance and the plaintiff's injuries become too attenuated to conclude that the defect caused the injury. Take for example the following scenario: a train goes into an emergency stop due to defective air brakes; and an employee, who has exited the train and is standing next to it merely waiting for the brakes to be repaired, is attacked by a rabid dog. Or the same employee waiting for the defect to be repaired decides to stretch his or her legs, goes for a walk, falls, and is injured. A court reasonably could find no causation as a matter of law in these situations.

court and REMAND for further proceedings consistent with this opinion.