STEPHANIE M. ROSE, JUDGE
Before the Court is Defendant BNSF Railway Company's ("BNSF") Motion for Summary Judgment. [ECF No. 15]. In this action, Plaintiff Gayle Andrews seeks recovery against BNSF, her former employer, under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 et seq. , and the Federal Safety Appliance Act ("FSAA"), 49 U.S.C. § 20301 et seq. , for injuries she allegedly sustained during her employment. BNSF moves for summary judgment on both of Andrews's claims. Although BNSF requested oral argument, the Court finds this matter can be appropriately resolved without it. See LR 7(c). The matter is fully submitted and ready for decision. As explained below, BNSF's motion is DENIED.
I. BACKGROUND
The following facts are undisputed unless otherwise indicated. Andrews worked *913 for BNSF as a conductor based out of Galesburg, Illinois. On October 15, 2014, Andrews was working as an "over-the-road" conductor on the route from Galesburg to Creston, Iowa. When working this route, she typically traveled from Galesburg to Creston, spent the night in Creston, and returned to Galesburg the next day. On this date in particular, Andrews received a duty call to take a loaded coal train to "ISU Station" near Helpin, Iowa. Andrews reported to the Creston depot during the afternoon, and the crew received their trip paperwork and a safety briefing. The train they were to take to ISU Station was parked at New York Avenue. The crew went to New York Avenue, conducted another safety briefing, and Andrews went to the coal cars to release the hand brakes.
Railroad freight cars have two kinds of braking systems: air brakes and hand brakes. Air brakes and hand brakes both function through a brake cylinder and piston. With air brakes, the piston extends from the brake cylinder as air pressure is reduced, and a series of brake rods and levers eventually forces the brake shoes against the railcar's wheels. Applying the air brakes pushes the piston out of the brake cylinder. Hand brakes are similar in nature to parking brakes on automobiles. Applying the hand brake pulls the piston out by tightening the brake chain. The brake chain is tightened by turning the wheel of the hand brake clockwise. To release the hand brake, an employee can either use the quick release lever or turn the wheel counterclockwise until the brake releases. Some hand brakes do not have a quick release lever and can only be released by turning the wheel. The parties dispute whether quick release levers are standard on all hand brakes. However, it is undisputed that a quick release lever cannot be replaced separately. Instead the whole hand brake mechanism must be replaced if a new quick release lever is necessary. To use the quick release lever, an employee rotates the lever to the "off" position until the brake releases. The quick release lever releases the brakes without turning the wheel. Even if it is used, a quick release lever may not fully release the hand brake, necessitating one or two turns of the wheel to release the brake completely. If the quick release lever releases the hand brake, the wheel spins freely.
Andrews received training on the operation of hand brakes. BNSF's Train, Yard, and Engine Safety Rules provide instructions on setting and releasing hand brakes. The rules state that if a quick release lever does not release the hand brake, the employee should use the wheel to release the brake by turning the wheel with steady pressure. If the wheel does not easily release the hand brake, the employee should have air applied to the car or seek assistance. The rules additionally instruct that when an employee is operating a hand brake, the employee should stand on the left side of the hand brake with her left foot on the ladder of the car and her right foot on the brake platform. The employee is required to grasp the ladder with her left hand and operate the hand brake wheel with her right hand. The General Code of Operating Rules instructs employees to be alert and attentive while working and to be careful to prevent injury to themselves and others. Andrews was familiar with how to set and release hand brakes; she had set and released hand brakes previously. BNSF states Andrews was adequately trained in these procedures, which Andrews disputes.
On October 15, 2014, Andrews began walking from the engine back along the rail cars. The grade at the New York Avenue location requires the use of twenty to thirty hand brakes to park a train, depending on the tonnage of the train.
*914 Andrews had worked at the New York Avenue location before. She released several brakes and then reached a car with a "short-handle" quick release lever. She does not remember the car number or any other identifiers. In the personal injury report Andrews submitted to BNSF, she included a car list for the train and indicated the car was within the train's first twenty cars. Andrews testified that COLX 4564 may have been the car, since it was the only one she could identify with a short handle quick release lever. Once Andrews reached the car, she looked at the hand brake to check that it was applied. She does not remember the wheel being bent or broken. Likewise, the chain was not bunched or kinked. Andrews did not see anything wrong with the hand brake.
Andrews mounted the ladder on the back of the car to release the hand brake. She first tried to use the quick release lever. She testified that the quick release lever did not release the brake. She made at least one more attempt to release the brake using the quick release lever before beginning to turn the wheel. Andrews put both of her hands on the wheel "and when [she] pulled down, it let go, and it just let go. That's when [she] fell to [her] knees and everything." [ECF No. 15-3 at 27]. When Andrews fell to her knees, "something happened, and [her] insides went ...." Id. at 29-30. The wheel released the hand brake. The parties dispute whether Andrews correctly followed BNSF's training and rules governing the release of hand brakes. Andrews did not report a problem with the car or the hand brake.
Andrews reported her injury to BNSF the next day. Three carmen inspected the twenty cars of the train two days later, on October 18, 2014, dividing up the inspections between them. In doing so, they inspected, set, and released the hand brakes of the cars, by using both the quick release lever and the wheel. They also set and released the brakes with and without the train's air brakes being set. All of the hand brakes, including the wheels and quick release levers, were in working order.
Andrews subsequently filed this action against BNSF, alleging two counts. [ECF No. 1]. Count One alleges Andrews's injuries were a result of BNSF's negligence in violation of the FELA. Count Two alleges BNSF violated the FSAA and such violation resulted in Andrews's injuries. After the close of discovery, BNSF moved for summary judgment on both of Andrews's claims. [ECF No. 15].
II. LEGAL STANDARD
"Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Paulino v. Chartis Claims, Inc. , 774 F.3d 1161, 1163 (8th Cir. 2014) ; accord Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." Doe v. Hagar , 765 F.3d 855, 860 (8th Cir. 2014) (quoting Amini v. City of Minneapolis , 643 F.3d 1068, 1074 (8th Cir. 2011) ). The moving party bears the burden of demonstrating there are no genuine issues of material fact. Gibson v. Geithner , 776 F.3d 536, 539 (8th Cir. 2015). Courts must view "the facts in the light most favorable to the nonmoving party and giv[e] that party the benefit of all reasonable inferences that can be drawn from the record." Pedersen v. Bio-Med. Applications of Minn. , 775 F.3d 1049, 1053 (8th Cir. 2015) (quoting Johnson v. Wells Fargo Bank, N.A. , 744 F.3d 539, 541 (8th Cir. 2014) ).
III. ANALYSIS
A. FELA Claim
The FELA allows railroad employees to seek damages for injuries "resulting *915 in whole or in part from the negligence" of the railroad. 45 U.S.C. § 51. "The FELA imposes upon employers a continuous duty to provide a reasonably safe place to work." Cowden v. BNSF Ry. Co. , 690 F.3d 884, 889 (8th Cir. 2012) (quoting Francisco v. Burlington N. R.R. Co. , 204 F.3d 787, 789 (8th Cir. 2000) ). Although the FELA is "liberally construed" to further its remedial purposes, it is not a workers' compensation statute and it does not make an employer an insurer of employees' safety. Consol. Rail Corp. v. Gottshall , 512 U.S. 532, 543, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994) ; Inman v. Baltimore & Ohio R.R. Co. , 361 U.S. 138, 140, 80 S.Ct. 242, 4 L.Ed.2d 198 (1959). Because a FELA claim is predicated on negligence on the part of the railroad-employer, a plaintiff must prove the traditional, common law elements of negligence: duty, breach, foreseeability, and causation. See Consol. Rail Corp. , 512 U.S. at 543-44, 114 S.Ct. 2396. However, "a relaxed standard of causation applies" in FELA cases. Id. at 543, 114 S.Ct. 2396 ; see Rogers v. Mo. Pac. R.R. Co. , 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957). "[T]he test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." Rogers , 352 U.S. at 506, 77 S.Ct. 443. Regarding foreseeability, the United States Supreme Court has "reasoned that a defendant's duty of care under FELA should simply be 'measured by what a reasonably prudent person would anticipate as resulting from a particular condition.' " Cowden , 690 F.3d at 896 (quoting Gallick v. Baltimore & Ohio R.R. Co. , 372 U.S. 108, 118, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963) ).
Interestingly, BNSF's motion and corresponding brief fail to separately address Andrews's FELA and FSAA claims. Despite BNSF's initial statement in its motion that Andrews cannot establish a prima facie case supporting either of her claims, BNSF does not specifically address the elements of each claim. Instead, BNSF only argues Andrews's own negligence was the sole cause of her alleged injuries. Causation is an element of both of Andrews's claims, thus the Court will interpret BNSF's argument as an attack on the causation element of each of Andrews's respective claims.
Regarding Andrews's FELA claim, the Court finds that BNSF has not met its burden of proving its entitlement to judgment as a matter of law. BNSF lays out the legal standards of FELA claims but does not apply those standards to the undisputed facts or clearly identify undisputed facts related to the elements of her FELA claim showing there is no genuine issue for trial. The Court will not perform the legal analysis of Andrews's FELA claim wholesale for BNSF.
The Court further finds it cannot conclude that Andrews's negligence was the sole cause of her damage as a matter of law. BNSF bases its argument on the fact that Andrews testified that she had both hands on the wheel at the time she fell rather than one hand on the wheel and her other hand on the ladder as BNSF training and safety rules dictate. However, whether Andrews's placing of her hand on the ladder would have served to prevent her from falling is a matter of fact. On the evidence before the Court, there is no way to discern whether her actions broke the causal connection between the failure of quick release lever, the "giving way" or "coming loose" of the wheel, and her subsequent fall. At the most, the fact that she operated the wheel with both hands indicates an issue of contributory negligence, which may reduce Andrews's damages but does not in and of itself bar recovery.
*916 B. FSAA Claim
The FELA also authorizes causes of actions not based on negligence. Among those is an action for a railroad's violation of the FSAA. 49 U.S.C. § 20301 et seq. The FSAA does not by its own terms "confer a right of action on injured parties." Grogg v. Mo. Pac. R.R. Co. , 841 F.2d 210, 212 (8th Cir. 1988). Instead, "the [FSAA] provide[s] the basis for the claim, and the FELA provides the remedy." Id. (first alteration in original).
To recover on a FSAA claim, a plaintiff must show: "(1) the statute was violated; and (2) the violation was 'a causative factor contributing in whole or in part to the accident' that caused her injuries." Id. (quoting Beimert v. Burlington N., Inc. , 726 F.2d 412, 414-15 (8th Cir. 1984) (per curiam) (footnote omitted), cert. denied , 467 U.S. 1216, 104 S.Ct. 2659, 81 L.Ed.2d 365 (1984) ). "The FSAA impose[s] [an] absolute dut[y] on railroads to provide required safety equipment on their trains, including safe power braking systems." Id. (citations omitted). As part of that duty, the FSAA mandates that railcars must be "equipped with ... efficient hand brakes." 49 U.S.C. § 20302(a)(1)(B). The lower standard of causation explained above also applies to claims based on the FSAA. See Richards v. Consol. Rail Corp. , 330 F.3d 428, 437 (6th Cir. 2003) ("Courts in FSAA cases ... should focus on whether a reasonable jury could conclude that the defective appliance played any part, even the slightest, in bringing about the plaintiff's injury.").
Andrews's FSAA claim hinges on whether the hand brake she encountered was an "efficient" hand brake within the meaning of the statute. In Myers v. Reading Co. , the United States Supreme Court articulated "two recognized methods of showing the inefficiency of hand brakes equipment. Evidence may be adduced to establish some particular defect, or the same inefficiency may be established by showing a failure to function, when operated with due care, in the normal, natural, and usual manner." 331 U.S. 477, 483, 67 S.Ct. 1334, 91 L.Ed. 1615 (1947) (quoting Didinger v. Pa. R. Co. , 39 F.2d 798, 799 (6th Cir. 1930) ). The Myers court further expanded on the standard for efficient equipment:
Proof of an actual break or visible defect ... is not a prerequisite to a finding that the statute has been violated. Where a jury finds that there is a violation, it will be sustained, if there is proof that the mechanism failed to work efficiently and properly even though it worked efficiently both before and after the occasion in question. The test in fact is the performance of the appli[ ]ance. Efficient means adequate in performance; producing properly a desired effect. Inefficient means not producing or not capable of producing the desired effect; incapable; incompetent; inadequate.
Id. (citation omitted).
The facts of Myers are also instructive here. In that case, an experienced brakeman attempted to tighten or set a brake. Id. at 484, 67 S.Ct. 1334. The brake remained unset, as indicated by a loose chain. Id. An experienced freight conductor then partially tightened the brake, finding that it was stiff and felt like a spring. Id. While the conductor was holding the wheel, it "kicked back," and he fell down, which caused serious injuries to his hand and back. Id. The Myers court determined that differing conclusions may have been possible on that evidence, but the jury could reasonably infer that the brake at issue was not an efficient one. Id. "The questions at issue were questions of fact." Id.
More recently, in Winder v. Union Pacific Railroad Co. , the Nebraska Supreme *917 Court also addressed the question of determining inefficiency as a matter of law. 296 Neb. 557, 894 N.W.2d 343, 347-48 (2017). In that case, a quick release lever failed to release the brake, and the employee proceeded to turn the wheel. Id. at 346. As he did so, he felt a pain in his back. Id. The case proceeded to a jury trial where the jury returned a verdict for the railroad. Id. The employee argued on appeal that he should have obtained a directed verdict on his FSAA claim based on the fact that the quick release lever failed to function. Id. at 347-48. The court noted that case law showed "that when there is conflicting evidence regarding whether a handbrake failed to function in the normal, natural, and usual manner, the question of inefficiency is one for the jury." Id. at 348. The court concluded that the denial of the motion for directed verdict and subsequent submission of the issue of inefficiency to the jury had been proper. Id. at 349.
Other courts have likewise found that the question of whether a particular hand brake was efficient was a matter for the trier of fact. Christian v. Ill. Cent. R.R. Co. , No. 3:14-CV-057 HTW-LRA, 2016 WL 5921371, at *3 (S.D. Miss. Oct. 9, 2016) ("The Defendant ... disputes that the hand brake was defective or failed to function properly.... [T]his is a material issue of fact to be decided by the fact finder."); Rogers v. Norfolk S. Ry. Co. , No. 3:13 CV 798, 2015 WL 4191147, at *6 (N.D. Ohio July 10, 2015) ("The failure of the hand brake to release when operated in the normal, natural, and usual manner remains a question for the trier of fact."); Ditton v. BNSF Ry. Co. , No. CV 12-6932 JGB JCGX, 2013 WL 2241766, at *13 (C.D. Cal. May 21, 2013) (denying cross motions for summary judgment on the issue of a hand brake's efficiency due to "conflicting testimony on the issue of defect such that a reasonable juror could find either that the quick release lever was or was not defective at the time of the injury"); Rine v. Burlington N. Santa Fe Ry. Co. , No. 11-CV-0392-CVE-PJC, 2012 WL 3599182, at *4 (N.D. Okla. Aug. 21, 2012) (finding a disputed issue of material fact existed "as to whether the brake worked efficiently at the time of plaintiff's accident" in light of testimony from plaintiff that the brake "gave"); see also Strickland v. Norfolk S. Ry. Co. , 692 F.3d 1151, 1155, 1160 (11th Cir. 2012) (reversing grant of summary judgment in case where quick release lever failed and finding plaintiff's testimony was sufficient to create genuine issue of material fact); Chapp v. Burlington N. Santa Fe R. Co. , No. 4:04CV3021, 2005 WL 1331157, at *1, *7 (D. Neb. June 2, 2005) (denying the plaintiff's motion for summary judgment in case where quick release lever failed and plaintiff suffered injuries from being "spun around" by the brake wheel due to conflicting evidence on issue of efficiency).
Perhaps case law like that above is one reason BNSF fails to directly address whether the hand brake at issue was efficient. Instead, as previously noted, BNSF only specifically addresses the element of causation, arguing that Andrews's own negligence was the sole cause of her alleged injuries. As part of this argument, BNSF repeatedly states that the quick release lever played no part in Andrews's injuries, neither causing nor contributing to them. Rather, BNSF contends, Andrews's negligent operation of the wheel-not the lever's failure to function-led to her damage. First, this appears patently incorrect since, at a minimum, the failure of the quick release lever to function began the sequence of events that led to Andrews's alleged injuries. Furthermore, the wheel and the quick release lever are both integral parts of a hand brake. Because Andrews contends the functioning of either or both is evidence that the hand brake was not efficient, BNSF would have to show that a reasonable jury could not conclude *918 that the alleged failure of either to function in the usual or desired manner played any part, even the slightest, in producing Andrews's harm. In this, BNSF clearly fails.
Consequently, BNSF's sole cause defense cannot succeed. Even in Beimert v. Burlington N., Inc. , the case from the United States Court of Appeals for the Eighth Circuit BNSF cites to support the use of such a sole cause defense in FSAA cases, the issue had been tried to a jury. 726 F.2d at 414. Here, the impact of Andrews's allegedly negligent operation of the hand brake wheel on causation simply cannot be determined as a matter of law. The evidence in this case is susceptible to more than one interpretation and "where the evidence allows more than one outcome on the issue of causation, the issue should be decided by a jury, not a judge." Richards , 330 F.3d at 437 (citing Rogers , 352 U.S. at 506-07, 77 S.Ct. 443 ).
IV. CONCLUSION
For the foregoing reasons, Defendant BNSF's Motion for Summary Judgment, [ECF No. 15] is DENIED.
IT IS SO ORDERED.