## A04A1438. NORFOLK SOUTHERN RAILWAY COMPANY v. SCHUMPERT.
### (608 SE2d 236)

ADAMS, Judge.

Under the Federal Employers' Liability Act (FELA), railroad companies are liable for injuries to their employees that result in whole or in part from company negligence. In this case, company negligence caused a railroad car coupling device to fall to the ground. Conductor James Hugh Schumpert injured his back when he replaced the 90-pound device. The main issue presented here is whether his injury can be said to have resulted, either in whole or in part, from the negligence that caused the device to fall.

Schumpert sued Norfolk Southern Railway Company (NSRC) for his injury and based his complaint on FELA[1] and the Federal Safety Appliance Act (FSAA).[2] Following a jury trial, NSRC moved for a directed verdict with regard to both claims. The trial court granted the motion on the FSAA claim but denied it on the FELA claim. Thereafter, the jury returned a verdict against NSRC in the amount

---

[1] 45 USC § 51 et seq.
[2] 49 USC § 20301 et seq.

of $596,681.41, which was entered as the court's judgment. NSRC moved for judgment notwithstanding the verdict and for new trial. The trial court denied the motions, and NSRC appeals.

The standard of review in this situation is well known:

> In determining whether the trial court erred by denying [the appellant's] . . . motion[ ] for judgment n.o.v., this court must view and resolve the evidence and any doubt or ambiguity in favor of the verdict. A directed verdict and judgment n.o.v. are not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict.

(Citation omitted.) *Irwin County v. Owens*, 256 Ga. App. 359, 360 (2) (568 SE2d 578) (2002).

The parties largely agree on the material facts. Construing those facts in favor of the verdict, the evidence shows that Schumpert was the NSRC conductor assigned to move a train from Atlanta to Commerce, Georgia, on August 20, 1999. During the trip, some of the train cars had to be turned around, which required a switching operation. Utility brakeman Debra Lusk assisted with this operation, which involved separating some of the cars to turn them around and then reassembling the train.

The part of a train car's coupler that interlocks with another car's coupler is called a "knuckle." Knuckles, which are attached to drawbars that are fastened to the housing of the train car, are designed to break off under certain conditions so as not to damage the drawbar and the car itself. A "knuckle pin" holds the knuckle in place when the knuckle is in the open position, but a pin is not required when the knuckle is in the closed position (even when the car is coupled to another car). In order to perform the required switching operation, Lusk had to open knuckles on cars that were going to be connected to the reassembled train. Lusk negligently failed to notice a missing pin on one knuckle, and when she opened it, the knuckle fell harmlessly to the ground.

Schumpert was 200 to 300 yards away at the time, but he came over to help. Lusk was pregnant, which Schumpert had heard, and so Schumpert decided to replace the knuckle himself. There was expert testimony that replacing a knuckle is a two-man job, but there was also testimony that it could be performed by one person. Schumpert believed that he was capable of replacing the knuckle himself because he had done so "over and over again" in the past; he considered it a regular part of his job. In fact, he had replaced a different knuckle earlier that same day. Lusk, too, had replaced four knuckles by herself in the past.

The parties do not dispute on appeal that Schumpert was injured as a result of lifting the knuckle to replace it. And there is no contention that Schumpert himself was negligent in any way. Rather, the causation question in this case is whether the negligence that led the knuckle to fall can be said to have caused Schumpert's injury because he had to replace the fallen knuckle.

1. The common law definition of causation is not applicable here, as even NSRC acknowledged at oral argument. The United States Supreme Court has called FELA "an avowed departure from the rules of the common law." *Sinkler v. Missouri Pacific R. Co.*, 356 U. S. 326, 329 (78 SC 758, 2 LE2d 799) (1958). FELA "was a response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety. [Cit.]" Id.

Under FELA, "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Rogers v. Missouri Pacific R. Co.*, 352 U. S. 500, 506 (77 SC 443, 1 LE2d 493) (1957).[3] Nevertheless, some evidence of causation is required; FELA is not a no-fault workers' compensation statute. *Consolidated Rail Corp. v. Gottshall*, 512 U. S. 532, 543 (114 SC 2396, 129 LE2d 427) (1994). Whether the employee's own negligence contributed to the injury is immaterial unless it can be seen as the sole proximate cause of the accident. See, e.g., *Kelson v. Central of Ga. R. Co.*, 234 Ga. App. 200 (505 SE2d 803) (1998).

NSRC characterizes Schumpert's claim as follows: " 'But for' Lusk's failure to observe the missing knuckle pin, [Schumpert] would not have been faced with the task of replacing a knuckle." NSRC contends that "but for" causation is insufficient. We find, however, that more than "but for" causation is present here.

Federal law interpreting FELA governs this issue. *Bagley v. CSX Transp.*, 219 Ga. App. 544, 545-546 (465 SE2d 706) (1995). A recent federal case on FELA causation guides our analysis. See *Richards v. Consolidated Rail Corp.*, 330 F3d 428 (6th Cir. 2003), cert. denied, *Consolidated Rail Corp. v. Richards*, 540 U. S. 1096 (124 SC 961, 157 LE2d 807).[4] In that case a train made an unexpected stop as a result of an alleged defect in the braking system. In response, Conductor Richards attempted to determine the cause of the stop by walking the

---

[3] As stated in the FELA, the carrier is liable for injuries or death "resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45 USC § 51.

[4] Although *Richards* is analyzed under the FSAA, causation analysis under FELA and FSAA are the same. *Richards*, 330 F3d at 433, n. 2.

length of the train and inspecting for visible causes. *Richards*, 330 F3d at 431. At some point, Richards lost his footing and allegedly injured his back. Id.

The Sixth Circuit was faced with long-standing precedent from its own court in which it had been held that there was a difference between an act of negligence that causes an injury and one that merely creates a condition or incidental situation under which an employee is injured:

> [T]here is liability only where the failure of the appliance not only creates a condition under which, or an incidental situation in which the employee is injured, but where the defective appliance is itself an efficient cause of or the instrumentality through which the injury is directly brought about.

*Reetz v. Chicago & Erie R. Co.*, 46 F2d 50, 52 (6th Cir. 1931). The *Richards* court noted that in 1957, in the critical *Rogers* decision mentioned above, the United States Supreme Court announced a relaxed test for establishing causation in FELA cases. *Richards*, 330 F3d at 433. After analyzing that standard and cases interpreting it, the *Richards* court "rejected *Reetz* in light of *Rogers* and [held] that *Reetz* no longer is good law." Id. at 437. The *Richards* court reiterated the *Rogers* test and further explained "that if a reasonable jury could find that the plaintiff's injury 'was within the risk created by' the defective appliance [or the negligence], the plaintiff's right to a jury trial should be preserved." Id.

> For example, if as a result of a defective appliance a plaintiff is required to take certain actions and he or she is injured while taking those actions, the issue of causation generally should be submitted to a jury.

Id. Accordingly, the *Richards* court held that there was a question of material fact regarding whether the allegedly defective brakes caused Richards's injurious fall.[5]

---

[5] In a footnote, the *Richards* court explained that there are limitations to its decision: Admittedly scenarios will arise where the connection between the defective appliance and the plaintiff's injuries become too attenuated to conclude that the defect caused the injury. Take for example the following scenario: a train goes into an emergency stop due to defective air brakes; and an employee, who has exited the train and is standing next to it merely waiting for the brakes to be repaired, is attacked by a rabid dog. Or the same employee waiting for the defect to be repaired decides to stretch his or her legs, goes for a walk, falls, and is injured. A court

We therefore conclude that the trial court properly submitted to the jury the question of whether NSRC's negligence played any part, even the slightest, in causing Schumpert's injury. Schumpert was acting directly in response to the negligence and he was lifting the very item that fell due to the negligence. His injury can be seen as being within the risk created by NSRC's negligence. Our conclusion is consistent with one federal case and one state case that have addressed the same set of facts. See *Chicago &c. R. Co. v. Goldhammer*, 79 F2d 272 (8th Cir. 1935), cert. denied, 296 U. S. 655 (56 SC 382, 80 LE 467) (1936); *Hendrick v. CSX Transp.*, 575 S2d 709 (Fla. App. 1991). In each case the court specifically concluded that the negligent (or defective) lack of a knuckle pin can be seen as a cause of an injury sustained while replacing a fallen knuckle.

Several of the cases upon which NSRC relies either predate *Rogers*[6] or are based on the reasoning of the now overruled *Reetz* or similar reasoning,[7] and therefore they are not controlling. Other cases are distinguishable because the injury was solely attributed to plaintiff's own negligence.[8] An Ohio case, cited by NSRC, can only be described as one where the connection between the negligence and the plaintiff's injuries was too attenuated as described in footnote 5 of *Richards*.[9] Finally, *Brooks v. Southern R. Co.*, 178 Ga. App. 361 (343 SE2d 143) (1986), upon which NSRC relies, is factually distinguishable and therefore not controlling. In that case, there was no evidence of any negligence by the railroad.

We find NSRC's reliance on the rule set forth in *Davis v. Wolfe*, 263 U. S. 239 (44 SC 64, 68 LE 284) (1923), to be unpersuasive. The *Davis* court noted that an employee cannot recover if the negligence or defect merely created "an incidental condition or situation in which the accident, otherwise caused, results in . . . injury." Id. at 243. This case is different because the negligence that led to the fallen knuckle can be seen as playing a part, "even the slightest," in producing Schumpert's injury. *Rogers*, 352 U. S. at 506.

---

reasonably could find no causation as a matter of law in these situations. Id. at n. 5.

[6] *McCalmont v. Penn. R. Co.*, 283 F 736 (6th Cir. 1922).

[7] *Green v. River Terminal R. Co.*, 763 F2d 805 (6th Cir. 1985); *Central of Ga. R. Co. v. Clark*, 95 Ga. App. 325 (98 SE2d 85) (1957) (following *Reetz*); *Powell v. Waters*, 55 Ga. App. 307 (190 SE 615) (1937) (reasoning similar to *Reetz*).

[8] See *Kelson v. Central of Ga. R. Co.*, 234 Ga. App. 200; *Radford v. Seaboard Coast Line R. Co.*, 122 Ga. App. 763 (178 SE2d 774) (1970).

[9] See *Reed v. Penn. R. Co.*, 171 NE2d 718 (Ohio 1961), cert. denied, 366 U. S. 936 (81 SC 1661, 6 LE2d 847) (45 minutes after the train was stopped because of a brake defect, the engineer, who was not required to assist with the repair, slipped and fell while descending from a ladder on his cab in response to a direction to make a telephone call to give an update on the movement of the train).

2. NSRC contends that evidence of Schumpert's future lost NSRC wages should have been excluded because Schumpert was properly fired only eight months after the injury for violating company policies by never reporting the accident and by misrepresenting the reason he had missed work. Schumpert no longer disputes that he was properly fired or that his termination was upheld following proceedings conducted pursuant to the Railway Labor Act, 45 USC § 151 et seq. The trial court allowed evidence of Schumpert's possible future earnings from NSRC. As a consequence, Schumpert presented evidence of the difference between what he was making with a new employer and what he would have made at NSRC.

But federal case law directly on point controls this issue adversely to NSRC. See *Kulavic v. Chicago &c. R. Co.*, 1 F3d 507 (7th Cir. 1993); *Pothul v. Consolidated Rail Corp.*, 94 FSupp.2d 269, 270 (N.D. N.Y. 2000); *Graves v. Burlington Northern &c. R. Co.*, 77 FSupp.2d 1215 (E.D. Okla. 1999). The only federal case on point cited by NSRC, *Kulavic v. Chicago &c. R. Co.*, 760 FSupp. 137 (C.D. Ill. 1991), was reversed by *Kulavic*, 1 F3d 507. We find no error.

Our decision also governs NSRC's claim that the jury should have been instructed that this same evidence could not be used to support a lost earnings claim.

*Judgment affirmed. Ruffin, P. J., and Eldridge, J., concur.*

DECIDED NOVEMBER 10, 2004 —
RECONSIDERATION DENIED DECEMBER 8, 2004 — 

*Forrester & Brim, Weymon H. Forrester, Weissman, Nowack, Curry & Wilco, William C. Thompson*, for appellant.
*Agnew & Bennett, Paul R. Bennett*, for appellee.