28 A.3d 60

**Donzel M. PAGE**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION, et al.**

**No. 01959, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

Sept. 2, 2011.

464

Randall E. Appleton, Virginia Beach, VA & David M. Kopstein, Seabrook, MD (Kopstein & Perilman, Shapiro, Cooper, Lewis & Appleton PC, on the brief), for appellant.

Stephen B. Caplis (J. Chrispher Nosher, Justin M. Cuniff, Setliff, Turner & Holland, PC, on the brief), Baltimore, MD, for appellee.

Panel: *HOLLANDER, ELLEN L., ZARNOCH and KEHOE, JJ.

KEHOE, J.

In the taxonomy of the law, the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq.*, is a platypus. Intended to provide a remedy for injured railroad workers, the FELA "hovers ambivalently between workers' compensation law and the common law of negligence. It is neither, but it partakes of characteristics of both." *CSX v. Miller,* 159 Md.App. 123, 129, 858 A.2d 1025 (2004). This case calls us to consider the roles that two basic concepts of negligence law, *res ipsa loquitur* and proximate cause, play in FELA claims.

Donzel M. Page filed suit against his former employer, the National Railroad Passenger Corporation ("Amtrak"), seeking recompense for a work-related injury. The Circuit Court for Baltimore City granted summary judgment in Amtrak's favor. Page has appealed and presents two issues, which we have consolidated and reworded:

> In an action based upon the Federal Employers' Liability Act, did the circuit court err in granting summary judgment in favor of Amtrak on the basis that Page presented no evidence that Amtrak breached any duty to him and that any negligence on Amtrak's part was not the proximate cause of his injuries?

---

* Ellen L. Hollander, J., participated in the hearing and conference of this case while an active member of this Court, but she resigned from the Court of Special Appeals prior to the filing of the actual opinion.

We conclude that Page presented evidence, albeit circumstantial, from which a fact-finder could reasonably infer that Amtrak was negligent and that physical injury was a foreseeable result of that negligence. While the relationship between Amtrak's negligence and Page's injuries may not satisfy the common law requirements for proximate causation, a plaintiff in a FELA action need only prove that " 'employer negligence played any part, even the slightest, in producing the injury. . . .' " *CSX Transp. v. McBride,* —— U.S. ——, 131 S.Ct. 2630, 2638 n. 2, 180 L.Ed.2d 637 (2011) (quoting *Rogers v. Missouri Pac. R.R. Co.,* 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957)). Page has met this unexacting threshold. Therefore, we will vacate the judgment entered on Amtrak's behalf and remand this case to the circuit court for trial.

### FACTUAL AND PROCEDURAL BACKGROUND

We set out the facts in the light most favorable to Page, as the non-moving party to the motion for summary judgment.[1] *See Reiter v. Pneumo Abex,* 417 Md. 57, 67, 8 A.3d 725 (2010). We first look to Page's deposition which provides the following information.

On February 22, 2007, Page, a police officer employed by Amtrak, was on duty near the information desk in Pennsylvania Station in Baltimore, Maryland. At approximately 5:00 pm, Page was approached by an Amtrak passenger who informed Page that a baggage cart was lying on a track adjacent to a passenger platform on the lower level of the terminal. Page's duties included removing obstructions from the railroad tracks within the terminal. Page, accompanied by Charles Harris, an Amtrak customer service employee (a "Red Cap"), went to the passenger platform to investigate.

At about the time they reached the lower level of the terminal, Page and Harris learned that there was an inbound train scheduled to arrive on the track that was blocked by the

---

1. The facts were drawn from the pretrial depositions of Page, Charles Harris, an Amtrak customer service employee, and Walter Rockey, Page's expert witness.

baggage cart. Harris made an emergency call on his radio to the train's engineer and the train stopped approximately 60 feet from the cart.

When Page arrived on the passenger platform, he observed that the train was unable to unload its passengers because of the track blockage. Page walked to the point of the platform closest to the cart, sat down on its edge,[2] and dropped onto the ballast adjacent to the track. In his deposition, he estimated that his feet were "between four and five feet" above the ballast when he dropped down. Page landed "a little off balance" and felt pain in his left hip. He pushed the cart off the tracks and walked back along the tracks to a set of stairs leading up to the platform. The train then pulled into position and disembarked its passengers onto the platform.

The layout of the platform was such that there were stairs at one end of the platform and a ramp at the other to provide access to the track. The stairs and the ramp were each about 100 yards from Page's location when he dropped off the platform. Page testified that he did not take the time to use the stairs or the ramp because he "wanted to get the patrons off the train in a timely fashion" to avoid a train delay.

At the end of his shift, Page filed a report about the incident. At that time, he declined medical attention. By the following day, Page's symptoms had worsened and he sought medical treatment. His physical condition continued to deteriorate and, as a result of the injury, Page eventually became unable to perform his duties for Amtrak.

When deposed, Harris, the Red Cap, stated that he had been employed as a Red Cap by Amtrak for 26 years. When describing the carts, Harris explained that they are "typical push cart[s]"[3] that have signs on them indicating that they are for Amtrak employee use only. Most of the carts have a cable

---

**2.** In his deposition, Page likened his position to "sitting on the edge of a pier."

**3.** The exact dimensions of the baggage cart are not set forth in the record.

that Amtrak employees could wrap around fixed structures on the platform or within the building to keep the public from using the carts. Harris stated that the use of, and responsibility for, the baggage carts is restricted to Amtrak employees. Typically the carts are used by Red Caps or baggage handlers to assist in luggage handling. However, all Amtrak employees are permitted to use the carts. While there is no formal or uniform procedure for monitoring the carts, Amtrak's custom is that the employee using the cart is responsible for monitoring the cart. It is against Amtrak practice and policy to leave carts unattended on passenger platforms. Harris stated that, while Amtrak does not permit non-employees to use baggage carts, "people being people, a lot [of] time[ ] they do take carts and they do use carts." Harris testified that carts end up on the tracks at Pennsylvania Station "maybe three to four times a year." [4]

On October 10, 2008, Page filed a complaint in the Circuit Court for Baltimore City against Amtrak under the provisions of the FELA. In his complaint, Page asserted that Amtrak negligently failed to provide a reasonably safe workplace and that this negligence was a cause of his injuries.

After the conclusion of written discovery and depositions, Amtrak filed a motion for summary judgment based on two grounds. First, Amtrak argued that, in order to recover, a "FELA plaintiff is required to prove traditional common law elements of negligence: breach, foreseeability, and causation." Amtrak asserted that, because Page had no direct evidence as to how the baggage cart happened upon the track, Page had no evidence of Amtrak's breach of duty. In addition, Amtrak argued that, because "Page's decision to jump to the tracks clearly constitutes contribution or voluntary activity ... the doctrine of *res ipsa loquitur* is not applicable in this case."

---

4. In his deposition, Page testified that, from his observation, Amtrak's policy against non-employees using the baggage carts was largely enforced and that, "for the most part," non-authorized use of the carts was not a problem. In the context of summary judgment, Page was entitled to the benefit of Harris' somewhat more helpful version of events.

Second, Amtrak contended that "Page's careless choice to jump to the tracks, instead of using a safe route, was the sole proximate cause of his injury."

In response, Page argued that, under the FELA, Amtrak was liable if any negligence on its part played any role in producing his injuries. The FELA requires that employers take reasonable precautions to provide employees with a safe workplace. According to Page, Amtrak's failure to take reasonable precautions to manage the baggage carts resulted in a baggage cart lying on a live track, thereby creating an unsafe workplace. Because Page injured himself while performing his duty of retrieving the cart from the track, Amtrak's negligence played some role in causing his injuries. Page further notes that his alleged contributory negligence, if any, is not a bar to recovery under the FELA. Page concluded that, as soon as he presented evidence of Amtrak's duty, Amtrak's breach of that duty and his own resulting injuries, a jury issue was created under the FELA and summary judgment was inappropriate.

After a hearing on September 23, 2009, the circuit court granted Amtrak's motion for summary judgment and entered final judgment in favor of Amtrak. The court stated in a written order:

> There is no evidence that negligence by the Defendant was a cause of Plaintiff's injuries because there is no evidence that Defendant breached any duty or that any breach was the cause of Plaintiff's injuries. The doctrine of *res ipsa loquitur* does not apply because Plaintiff was not without fault in causing his injuries. There is no evidence that Defendant failed to provide Plaintiff with a reasonably safe place to work or that his fellow employees were negligent in that they failed to adequately secure the baggage cart which Plaintiff was attempting to retrieve. There is no evidence that an appearance of the baggage cart on the tracks was the actual and proximate cause of Plaintiff's injuries.

## I.  The FELA

In order to put the parties' contentions into proper focus, we will briefly review the pertinent provisions of the FELA. This is well-ploughed ground in Maryland because the FELA and related statutes [5] have been the subject of several recent decisions by this Court and the Court of Appeals. *See Collins v. Nat'l R.R.*, 417 Md. 217, 230–41, 9 A.3d 56 (2010), *cert dismissed*, —— U.S. ——, 131 S.Ct. 1811, 179 L.Ed.2d 673 (2011); *Haischer*, 381 Md. at 125–28, 848 A.2d 620 (interpreting the Federal Boiler Inspection Act); *CSX v. Bickerstaff*, 187 Md.App. 187, 206–08, 978 A.2d 760 (2009); *Norfolk S. Railway Corp. v. Tiller*, 179 Md.App. 318, 322–26, 944 A.2d 1272 (2008); and *CSX v. Miller*, 159 Md.App. 123, 128–46, 858 A.2d 1025 (2004).

As Judge Moylan explained for this Court in *Miller*, the FELA, originally enacted in 1906, is a remedial statute intended to modify common law rules of negligence in actions brought by employees of railroads to recover for injuries suffered in the course of their employment. 159 Md.App. at 129–30, 858 A.2d 1025. The Act, and the cases interpreting it, have created a substantive federal body of law pertaining to the allocation of risk between a railroad and its employees. *Collins*, 417 Md. at 231 n. 10, 9 A.3d 56 (" 'As a general matter, FELA cases adjudicated in state court are subject to state procedural rules, but the substantive law governing them is federal.' ") (quoting *St. Louis S.W. Ry. Co. v. Dickerson*, 470 U.S. 409, 411, 105 S.Ct. 1347, 84 L.Ed.2d 303 (1985)).

The purpose of the statute was, in Justice Douglas's striking phrase, "to put on the railroad industry some of the cost for the legs, eyes, arms, and lives which it consumed in its operations." *Wilkerson v. McCarthy*, 336 U.S. 53, 68, 69 S.Ct.

---

**5.**  The Boiler Inspection Act, now codified at 49 U.S.C. §§ 20701–20703, and the Federal Safety Appliance Act, now codified at 49 U.S.C. §§ 20301–20306, imposed specific requirements on railroads for safe operating equipment on locomotives and rolling stock.  A violation of either act constitutes negligence *per se* in FELA claims.  *See Urie v. Thompson*, 337 U.S. 163, 188, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949); *Haischer v. CSX*, 381 Md. 119, 125, 848 A.2d 620 (2004).

413, 93 L.Ed. 497 (1949) (concurring opinion). To that end, the FELA, an initially enacted and by subsequent amendment, abolished certain common law defenses otherwise available to employers, such as assumption of risk,[6] the fellow servant doctrine,[7] and contributory negligence.[8] *Miller,* 159 Md.App. at 133–36, 858 A.2d 1025. What was less clear, at least initially, was the degree to which the Act modified common law rules of causation.

In a common law negligence action, a plaintiff must prove that the defendant's breach of duty was both a factual and a legally cognizable (or proximate)[9] cause of the plaintiff's injury. In contrast, the FELA provides that:

> Every common carrier by railroad while engaging in commerce between any of the several States ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... for such

---

**6.** The defense of assumption of risk was abolished by Congress in 1939. Law of Aug. 11, 1939, ch. 685 § 1, 53 Stat. 1404 (1939) (current version at 45 U.S.C. § 54 (2011)); *see Miller,* 159 Md.App. at 137–38, 858 A.2d 1025.

**7.** 45 U.S.C. § 51.

**8.** Congress eliminated contributory negligence as a defense by an amendment to the FELA in 1908. Law of Apr. 22, 1902, ch. 149 § 3, 35 Stat. 66 (1908) (current version at 45 U.S.C. § 53 (2011)); *see Miller,* 159 Md.App. at 137, 858 A.2d 1025. As amended, the statute now provides that, in lieu of the defense of contributory negligence, "damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee...."

**9.** The *term* "proximate cause" is shorthand for a concept: Injuries have countless causes, and not all should give rise to legal liability. See W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 42, p. 273 (5th ed. 1984).... "What we ... mean by the word 'proximate,' " one noted jurist has explained, is simply this: "[B]ecause of convenience, of public policy, of a rough sense of justice, the law arbitrarily declines to trace a series of events beyond a certain point." *Palsgraf v. Long Island R. Co.,* 248 N.Y. 339, 352, 162 N.E. 99, 103 (1928) (Andrews, J., dissenting).

*McBride,* 131 S.Ct. at 2637 (emphasis in original). Maryland adheres to the concept of proximate cause as an element of a negligence action. *See, e.g., Pittway v. Collins,* 409 Md. 218, 243–44, 973 A.2d 771 (2009); *Barclay v. Ports America,* 198 Md.App. 569, 584–85, 18 A.3d 932 (2011).

injury or death *resulting in whole or in part* from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence in its ... track, roadbed ... or other equipment.

45 U.S.C. § 51 (emphasis added).

Earlier Supreme Court decisions construing § 51 of the FELA were not consistent as to whether proof of proximate cause was necessary for a plaintiff's recovery. *Compare O'Donnell v. Elgin, Joliet & E. Ry. Co.*, 338 U.S. 384, 394, 70 S.Ct. 200, 94 L.Ed. 187 (1949) ("[P]laintiff was entitled to a[n] ... instruction ... which rendered defendant liable for injuries proximately resulting therefrom.") (applying Federal Safety Appliance Act), *and Davis v. Wolfe*, 263 U.S. 239, 243, 44 S.Ct. 64, 68 L.Ed. 284 (1923) ("[A]n employee cannot recover ... if the [employer's] failure ... is not a proximate cause of the accident ....") (applying Federal Safety Appliance Act), *with Union Pac. R.R. Co. v. Huxoll*, 245 U.S. 535, 537, 38 S.Ct. 187, 62 L.Ed. 455 (1918) (Instruction that railroad was liable if negligence contributed " 'in whole or in part' " to accident was consistent with the FELA.). The Supreme Court clearly set forth the appropriate causation standard for FELA cases in *Coray v. S. Pac. Co.*, 335 U.S. 520, 523–24, 69 S.Ct. 275, 93 L.Ed. 208 (1949) and *Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957).

In *Coray*, the plaintiff brought an action under the FELA and the Federal Safety Appliance Act, which provided that certain safety violations by railroads constituted negligence *per se*. The trial court directed a verdict in favor of the railroad, the Utah Supreme Court affirmed the trial court and the Supreme Court reversed. The Utah Supreme Court held that the railroad's negligence, which caused the brakes to malfunction in a train, was not the proximate cause of decedent's death (which resulted when a motorized rail car he was operating collided with the train). In commenting on this analysis, the Supreme Court stated:

The Utah Supreme Court .... discussed distinctions between "proximate cause" in the legal sense, deemed a sufficient cause to impose liability, and "cause" in the "philosophic sense," deemed insufficient to impose liability. It considered the stopping of this train to have been a cause of decedent's death in the "philosophic sense" in that the stopping created "a condition upon which the negligence of plaintiffs' intestate operated," one perhaps of many causes "so insignificant that no ordinary mind would think of them as causes." The court added, however, that the stopping [of the first train] "was not the legal cause of the [collision]...."

*The language selected by Congress to fix liability in cases of this kind is simple and direct. Consideration of its meaning by the introduction of dialectical subtleties can serve no useful interpretative purpose. The statute declares that railroads shall be responsible for their employees' deaths "resulting in whole or in part" from defective appliances such as were here maintained.*

*Coray,* 335 U.S. at 523–24, 69 S.Ct. 275 (emphasis added). *Coray* involved both the Federal Safety Appliance Act and the FELA. *Rogers* expanded *Coray's* holding to claims based solely on the FELA itself.

In *Rogers,* the employee worked on a "section gang" maintaining track beds. His assignment on the day in question was setting fire to weeds growing close to the tracks. A draft created by a passing train caused the smoldering weeds to flare up. Retreating from the fire, Rogers stepped backwards and was injured when he slipped and fell from a walkway running alongside the track. He contended that the railroad negligently failed to maintain safe footing for line maintenance workers. *Rogers,* 352 U.S. at 502–03, 77 S.Ct. 443. A jury verdict in his favor was reversed by the Missouri Supreme Court on the basis that the evidence did not support the award. *Id.* at 501, 77 S.Ct. 443. We are concerned with an alternative ground for the Missouri court's holding, which was that Roger's own conduct was "at least as probable a cause for

his mishap as any negligence" of the railroad. *Id.* at 505, 77 S.Ct. 443. The Supreme Court rejected this reasoning:

> The [Missouri Supreme Court's] opinion may also be read as basing the reversal on another ground, namely, that it appeared to the court that the petitioner's conduct was at least as probable a cause for his mishap as any negligence of the respondent, and that in such case there was no case for the jury.... The Missouri court's opinion implies its view that this is the governing standard by saying that the proofs must show that "the injury would not have occurred but for the negligence" of his employer, and that "the test of whether there is causal connection is that, absent the negligent act the injury would not have occurred."[ ] *That is language of proximate causation which makes a jury question dependent upon whether the jury may find that the defendant's negligence was the sole, efficient, producing cause of injury.*
>
> *Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.*[ ] It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence.[ ] Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played *any* part at all in the injury or death.[ ]

*Id.* at 505–06, 77 S.Ct. 443 (footnotes omitted; emphasis added.)

The Supreme Court reaffirmed the appropriate standard for causation in FELA actions in *McBride.* In doing so, it held that the *Coray/Rogers* standard continues to displace common law rules of proximate causation in FELA cases.

McBride, a locomotive engineer, filed a FELA action to recover for a work-related injury. At trial, the employer

requested a jury instruction that, in order to prevail, the plaintiff was required to show that the employer's negligence was "a proximate cause of the injury," as well as another instruction explaining the concept of proximate cause. 131 S.Ct. at 2635. Instead, the trial court gave the following instruction:

"Defendant 'caused or contributed to' Plaintiff's injury if Defendant's negligence played a part—no matter how small—in bringing about the injury. The mere fact that an injury occurred does not necessarily mean that the injury was caused by negligence."

*Id.*

The Supreme Court granted the railroad's petition for certiorari to consider whether the causation instruction was proper in FELA cases. *Id.* at 2636. Before the Court, CSX raised two principle contentions. First, it argued that:

the *Rogers* "any part" test displaced only common-law restrictions on recovery for injuries involving contributory negligence or other "multiple causes." *Rogers* "did not address the requisite directness of a cause," hence that question continues to be governed by restrictive common-law formulations.

*Id.* at 2637 (citation and footnote omitted).

Writing for the majority, Justice Ginsburg, joined by four other justices, rejected this argument, noting that "*Rogers* instructed that 'the test of a jury case [under FELA] is simply whether ... employer negligence played any part, even the slightest, in producing the injury.'" *Id.* at 2638 n. 2. (quoting *Rogers,* 352 U.S. at 506, 77 S.Ct. 443). In addition, Justice Ginsburg stated that "*Rogers* is most sensibly read as a comprehensive statement of the FELA causation standard." *Id.* The majority's analysis explicitly confirmed that considerations of traditional, common law rules of proximate causation play no role in assessing liability under the FELA. *Id.* at 2639–2640.

As a second ground for reversal, CSX contended that:

proximate causation ... is a concept fundamental to actions sounding in negligence. The *Rogers* "any part" instruction opens the door to unlimited liability, ... inviting juries to impose liability on the basis of "but for" causation.

*Id.* at 2641.[10]

In response to this concern, Justice Ginsburg stated:

"[R]easonable foreseeability of harm,"... is indeed "an essential ingredient of [FELA] *negligence.*" ... Thus, "[i]f a person has no reasonable ground to anticipate that a particular condition ... would or might result in a mishap and injury, then the party is not required to do anything to correct [the] condition."[ ] If negligence is proved, however, and is shown to have *"played any part, even the slightest, in producing the injury,"*[ ] then the carrier is answerable in damages even if "the extent of the [injury] or the manner in which it occurred" was not "[p]robable" or "foreseeable."

Properly instructed on negligence and causation, and told, as is standard practice in FELA cases, to use their "common sense" in reviewing the evidence ..., juries would have no warrant to award damages in far out "but for" scenarios. Indeed, judges would have no warrant to submit such cases to the jury.

*Id.* at 2643 (citing, among other authorities, *Gallick v. Baltimore & Ohio R.R. Co.,* 372 U.S. 108, 117, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963); *Rogers,* 352 U.S. at 506, 77 S.Ct. 443; and 4 F. Harper, F. James, & O. Gray, LAW OF TORTS § 20.5(6), p. 203 (3d ed.2007)) (internal citations and footnotes omitted; emphasis added in *McBride* ).[11]

---

**10.** As examples of what it deemed to be examples of impermissible "but for" causation, CSX directed the Court to *Richards v. Consol. Rail Corp.,* 330 F.3d 428, 431, 437 (6th Cir.2003) and *Norfolk S.R. Co. v. Schumpert,* 270 Ga.App. 782, 783–86, 608 S.E.2d 236 (2004). However, Justice Ginsburg stated that the "causal link in these cases is hardly farfetched." *McBride* at 2641 n. 9. The degree of causation between the railroads' negligence and the employees' injuries in *Richards* and *Schumpert* is analogous to that in the case before us and we will discuss these cases later in this opinion.

**11.** In a separate portion of the opinion, Justice Ginsburg also suggested that the causation standard in *Rogers* did not "eliminate[ ] the *concept*

However, while the causation that must be shown under the FELA may be "a relaxed standard of causation[,]" some degree of causation must still be proved. *McBride*, 131 S.Ct. at 2636; *Miller*, 159 Md.App. at 135, 858 A.2d 1025 ("A FELA suit can be successfully pursued by an employee only if there is proof of some negligence on the part of the railroad [but] the negligence that must be shown in a FELA action is but a pale reflection of common law negligence.").

## II. Standard of Review

When reviewing a trial court's grant of summary judgment, this Court conducts a *de novo* review of the record before the circuit court to determine whether that court was legally correct. *Reiter*, 417 Md. at 67, 8 A.3d 725. We first determine whether there are disputed material facts. A dispute of fact is material when it might affect the outcome of the case. *Remsburg v. Montgomery*, 376 Md. 568, 580, 831 A.2d 18 (2003). If we conclude there are no disputed material facts, we decide whether the moving party is entitled to judgment as a matter of law. *Reiter*, 417 Md. at 67, 8 A.3d 725. In a FELA claim, a plaintiff is required " 'to present more than a scintilla of evidence in order to create a jury question on the issue of employer liability, but *not much more.*' " [12] *Miller*, 159

---

of proximate cause in FELA cases[ ]," but rather described the test for proximate causation for such actions. *Id.* at 2641 (footnote omitted; emphasis in original). However, Justice Thomas did not join in that portion of the Court's opinion. *Id.* at 2634.

What is important for the purposes of our analysis is that the majority rejected the notion that the common law concept of proximate cause plays a role in determining liability under the FELA.

12. In its brief, Amtrak cites two cases, *Brown v. CSX Transp., Inc.*, 18 F.3d 245, 248 (4th Cir.1994) and *Mullahon v. Pac. R.R.*, 64 F.3d 1358, 1364 (9th Cir.1995), to support its contention that, to survive summary judgment, Page was required to show more than a "mere scintilla" of evidence in support of his claim. In *Brown*, the Court of Appeals for the Fourth Circuit held that a plaintiff must demonstrate " 'substantial evidence' " of negligence before a FELA case can be submitted to the jury. 18 F.3d at 248. *Brown*, however, appears to be the exception, not the rule.

In *Mullahon*, a summary judgment case, the Court stated that "courts have applied a rule very much like the 'scintilla rule' to FELA cases. In

Md.App. at 224, 858 A.2d 1025 (quoting *Aparicio v. Norfolk &
W. Ry. Co.*, 84 F.3d 803, 810 (6th Cir.1996) (emphasis added in
*Miller* )).  In considering a motion for summary judgment in a
FELA case we must also bear in mind that to " 'deprive
[railroad] workers of the benefit of a jury trial in close or
doubtful cases is to take away a goodly portion of the relief
which Congress has afforded them.' " *Phillips v. Chesapeake
& Ohio Ry. Co.*, 475 F.2d 22, 24 (4th Cir.1973) (quoting *Bailey
v. Cent. Vermont Ry.*, 319 U.S. 350, 354, 63 S.Ct. 1062, 87
L.Ed. 1444 (1943)).  We will now turn to the merits of the case
before us.

### III.  Analysis

In order to prevail in a FELA claim, a plaintiff must
establish:

First, that the defendant is a railroad engaged in interstate
commerce;

---

FELA cases, 'it is only necessary that the jury's conclusion be one
which is not outside the possibility of reason on the facts and circum-
stances shown.' " 64 F.3d at 1363–64 (citations omitted).  *Mullahon*
offers no support to Amtrak's contention.

To the extent that the other Circuits have ruled on the issue, they
have not followed *Brown.*  *See Aparicio*, 84 F.3d at 810 (A "Federal
Employers' Liability Act plaintiff [must] present more than a scintilla of
evidence in order to create a jury question on the issue of employer
liability, but not much more.");  *Hines v. CONRAIL*, 926 F.2d 262, 268
(3d Cir.1991) (" '[A] trial court is justified in withdrawing ... issue[s]
from the jury's consideration only in those extremely rare instances
where there is a zero probability either of employer negligence or that
any such negligence contributed to the injury of an employee.' ")
(quoting *Pehowic v. Erie Lackawanna R.R.*, 430 F.2d 697, 699–700 (3d
Cir.1970));  *Harbin v. Burlington N.R. Co.*, 921 F.2d 129, 131 (7th
Cir.1990) ("It is well established that the quantum of evidence required
to establish liability in an FELA case is much less than in an ordinary
negligence action.");  *Metcalfe v. Atchison, Topeka & Santa Fe Ry. Co.*,
491 F.2d 892, 895 (10th Cir.1974) ("The standard applied by federal
courts in determining whether there is sufficient evidence to send a
FELA case to the jury is significantly broader than the standard applied
in common law negligence actions.") (citing *Lavender v. Kurn*, 327 U.S.
645, 653, 66 S.Ct. 740, 90 L.Ed. 916 (1946) ("Only when there is a
complete absence of probative facts to support the conclusion reached
does a reversible error appear.")).

Second, that the plaintiff was an employee of the defendant in interstate commerce, acting in the course of his employment;

Third, that the defendant or one of its employees or agents was negligent; and

Fourth, that such negligence played a part, no matter how slight, in bringing about an injury to the plaintiff.

5 L. Sand *et al.*, MODERN FEDERAL JURY INSTRUCTIONS-CIVIL P 89.02, pp. 89–38, 89–40 (2010); *see also McBride*, 131 S.Ct. at 2639–40 (similar instructions approved by every federal circuit that reviews FELA judgments); *Collins*, 417 Md. at 251, 9 A.3d 56 ("A prima facie case of negligence under FELA is based on the common law elements in accordance with federal law:  duty, breach, foreseeability, and causation.[ ][ ]" (Footnotes omitted.)).

The circuit court granted summary judgment in Amtrak's favor because it concluded that Page failed to present sufficient evidence to create a jury issue on the third and fourth elements of the cause of action.  The circuit court's *ratio decidendi* was as follows:

1.  Page was not able to show negligence on Amtrak's part because he had no direct evidence as to how the cart ended up on the tracks and, because he was at fault, a fact-finder would be barred from inferring negligence on Amtrak's part.

2.  Even assuming that Amtrak was negligent, the "appearance of a baggage cart on the tracks was [not] the actual and proximate cause of [Page's] injuries."

We will discuss each ground in turn.

Page contends that Amtrak had a duty to provide a safe workplace and that it breached its duty by failing to properly control its baggage carts.  Conceding that he does not know how the baggage cart ended up on the track, Page asserts that a jury could reasonably infer from the circumstances that either an Amtrak employee negligently (i) allowed the cart to roll from the platform onto the tracks or (ii) failed to maintain supervision and control over the cart, thus permitting a non-

employee to do the same. In other words, his position is that the doctrine of *res ipsa loquitur* would permit the jury to conclude that the baggage cart would not have ended up on the track without some fault on Amtrak's part.

Amtrak presents various theories as to why summary judgment was appropriate, all of which revolve around the following themes:

1. Amtrak did not breach a duty to Page because it took reasonable steps to secure the baggage carts and, in any event, Page's injuries were not a foreseeable consequence of any breach;

2. Page's reliance on circumstantial evidence to prove a breach of duty was unwarranted because the doctrine of *res ipsa loquitur* is inapplicable in this case; and

3. Amtrak's negligence, if any, was not the proximate cause of Page's injury.

We will address these contentions in turn.

### A. The Existence of Duty—Foreseeability

A railroad has a "a non-delegable duty to provide [employees] with a safe place to work." *Brown v. CSX Transp.*, 18 F.3d 245, 249 (4th Cir.1994) (citing *Shenker v. Baltimore & Ohio R.R.*, 374 U.S. 1, 7, 83 S.Ct. 1667, 10 L.Ed.2d 709 (1963); *Chesapeake & Ohio Ry. v. Thomas*, 198 F.2d 783, 786 (4th Cir.1952)). Amtrak contends that it did not breach this duty because it took reasonable precautions to protect employees from harm and that it "may not be held liable if it had no reasonable way of knowing that the hazard which caused Page's injury existed."

The evidence in the record as to the steps Amtrak took to secure carts comes from the deposition testimony of Page and Harris. From it, one can reasonably infer that Amtrak recognized that unattended baggage carts were potentially problematic because: (1) Amtrak provided locking cables on some, but not all, of the carts so that Amtrak employees could secure them when they were not using them; (2) Amtrak had a policy, even if informally promulgated, prohibiting employees

from leaving the carts unattended; and (3) each employee using a cart was responsible for monitoring the cart to prevent unauthorized use.

If the specific cart in question lacked a securing cable, Amtrak is responsible for the failure to provide it. If that cart had a cable but was not locked through the oversight of an Amtrak employee, Amtrak is nonetheless responsible, as the fellow servant doctrine is not a defense in FELA actions. *Consol. Rail Corp. v. Gottshall,* 512 U.S. 532, 560 n. 2, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994); *Miller,* 159 Md.App. at 137, 858 A.2d 1025.

■ However, a breach of duty, by itself, is insufficient to establish negligence. *McBride* reminds us that a plaintiff must also establish that the harm to a person was a foreseeable consequence of the breach. "If a person has no reasonable ground to anticipate that a particular condition ... would or might result in a mishap and injury, then the party is not required to do anything to correct [the] condition." 131 S.Ct. at 2643 (quoting *Gallick,* 372 U.S. at 118, 83 S.Ct. 659). As Judge Moylan explained for this Court in *Miller:*

> "[f]oreseeability does not require the employer to have anticipated the plaintiff's injury in the precise manner in which it occurred. It is sufficient if the employer could reasonably foresee that *an* injury might occur. In a close case, the FELA action should be allowed to proceed to trial."

159 Md.App. at 221, 858 A.2d 1025 (quoting *Elston v. Union Pac. R.R. Co.,* 74 P.3d 478, 482 (Colo.App.2003) (emphasis in original)); *Green v. River Terminal Ry. Co.,* 763 F.2d 805, 808 (6th Cir.1985) ("The test of foreseeability does not require that the negligent person should have been able to foresee the injury in the precise form in which it in fact occurred. Rather, it is sufficient if the negligent person might reasonably have foreseen that an injury might occur.").

■ The record, taken in the light most favorable to Page, establishes that unauthorized persons used baggage carts at Pennsylvania Station on multiple occasions and that unattend-

ed carts wound up on tracks at the station three or four times a year. From this evidence, a fact finder could infer that Amtrak should have foreseen the possibility of harm, either by a cart's collision with a person, injuries caused when a train stopped unexpectedly to avoid a cart or, as here, when an employee was injured in the course of removing the cart from the track. Amtrak need not have foreseen Page's specific injury. It was enough that Amtrak reasonably should have foreseen that an injury to a person could have resulted from the unattended carts. *See Miller*, 159 Md.App. at 221, 858 A.2d 1025.[13]

### B. Evidence of Breach of Duty—Res Ipsa Loquitur

■ Amtrak asserts that Page's own conduct was the sole cause of his injury and that, because there was direct evidence, in the form of Page's own testimony, as to how he was injured, Page's reliance on circumstantial evidence to show a breach of duty was unwarranted and the doctrine of *res ipsa loquitur* is inapplicable.

■ As Judge James Eyler recently explained:
Normally, a plaintiff must provide evidence of a defendant's specific conduct, which can be by direct or circumstantial evidence, or both. *Res ipsa loquitur* is a rule of circumstantial evidence and an exception to the above requirement. When applicable, it permits an inference of actionable negligence in some unspecified way based on circumstantial

---

**13.** Amtrak also contends that the testimony of Page's expert witness, Walter Rockey, eliminates the possibility of Amtrak's negligence and that, under the principle of estoppel by admission, Page is bound to maintain the same position. We do not agree with Amtrak's characterization of Rockey's testimony. Rockey testified that Amtrak employees are responsible for keeping the carts under their control or otherwise secured. While Rockey agreed that Amtrak violated no known regulation by leaving the carts unlocked, thereby suggesting a lack of negligence *per se*, he at no point eliminated the possibility of negligence in general. In fact, in Rockey's deposition, Amtrak's own counsel stated "I think [that] we might all agree [the carts] should be locked or secured if they're going to remain [on the platform level] for any length of time."

evidence of events, even though the plaintiff was unable to prove a specific act.

*Romero v. Brenes,* 189 Md.App. 284, 303, 984 A.2d 346 (2009) (dissenting opinion) (citing *Dover Elevator Co. v. Swann,* 334 Md. 231, 259, 638 A.2d 762 (1994); Dan B. Dobbs, THE LAW OF TORTS, § 154 (2000)).

At common law, the applicability of *res ipsa loquitur* was limited:

"when a thing which causes injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such as in the ordinary course of things does not occur if the one having such control uses proper care, [*res ipsa loquitur* ] affords reasonable evidence, in the absence of an explanation, that the injury arose from the defendant's want of care."

*Jesionowski v. Boston & Maine R.R.,* 329 U.S. 452, 456, 67 S.Ct. 401, 91 L.Ed. 416 (1947) (quoting *San Juan Light & Transit Co. v. Requena,* 224 U.S. 89, 98–99, 32 S.Ct. 399, 56 L.Ed. 680 (1912)).

*Jesionowski* is the landmark Supreme Court decision regarding the proper application of *res ipsa loquitur* in FELA claims. The case involved a claim arising out of a train derailment in which the employee was killed. The derailment was caused either by the employee's failure to throw a manually operated rail switch at the correct time or by the mechanical failure of a nearby switch. After the accident, both switches were found to be in working order. There was no direct evidence as to the specific cause but some circumstantial evidence suggested that the employee had been negligent. *Jesionowski,* 329 U.S. at 453–54, 67 S.Ct. 401. The issue before the Supreme Court was whether *res ipsa loquitur* was available to the employee's estate to prove negligence. The Court held that it was:

[*Res ipsa loquitur* ] has rigidly defined prerequisites, one of which is that, to apply it, the defendant must have exclusive control of all the things used in an operation which might probably have caused injury. Here the railroad did

not have exclusive control of all probable causative factors, since deceased had some immediate control over switching and signaling. "Exclusive control" of all probable causative factors, the [lower] court reasoned, means that *res ipsa loquitur* cannot be applied even though those non-exclusively controlled factors are clearly shown to have had no causal connection with the accident.

We cannot agree. *Res ipsa loquitur*, thus applied, would bar juries from drawing an inference of negligence on account of unusual accidents in all operations where the injured person had himself participated in the operations, even though it was proved that his operations of the things under his control did not cause the accident. This viewpoint unduly restricts the power of juries to decide questions of fact. . . .

Thus, the question here really is not whether the application of the rule relied on fits squarely into some judicial definition, rigidly construed, but whether the circumstances were such as to justify a finding that this derailment was a result of the defendant's negligence. We hold that they were.

Derailments are extraordinary, not usual, happenings. When they do occur, a jury may fairly find that they occurred as a result of negligence.

*Id.* at 456–57, 67 S.Ct. 401.

*Jesionowski* instructs that the pertinent question in FELA cases is not whether the facts "fit[ ] squarely into some judicial definition, rigidly construed, but whether the circumstances were such as to justify a finding ... [of] ... negligence." Analogizing to *Jesionowski*, baggage carts do not, as a matter of routine, end up on train tracks. Interpreting the facts most favorably to Page, there is evidence that Amtrak's policy was that carts were not to be left unattended by the employees, that the railroad provided locking devices for some but not all carts and that, nonetheless, "people being people, a lot [of] time[ ] they do take carts and they do use carts." There was sufficient evidence in the record for a fact finder to infer that

Amtrak had a duty to properly control the use of the carts and that Amtrak breached that duty.[14]

Amtrak claims that Page cannot avail himself of *res ipsa loquitur* because "he was not without fault in causing his injuries." This argument is not persuasive. Even at common law, the possibility of contributory negligence does not necessarily bar recourse to *res ipsa loquitur;* instead, a plaintiff's "own negligence, along with that of anyone else for whom the defendant is not responsible, [must] be eliminated so as to complete the basis for an inference that the negligence of which the thing speaks is probably that of defendant." *Stoskin,* 256 Md. at 713–14, 262 A.2d 48 (quoting 2 Harper & James, LAW OF TORTS § 19.8 (1956) at 1093). Page was not at fault in the chain of events of resulted in the cart's being pushed onto the track because he had nothing to do with it. Amtrak's argument focuses on the wrong end of the series of events leading to Page's injury. In addition, *Jesionowski* makes it clear that the traditional strictures upon the availability of *res ipsa loquitur* do not apply in FELA cases.[15]

---

**14.** We are not suggesting that *Jesionowski* is applicable outside of the FELA context. *See Stoskin v. Prensky,* 256 Md. 707, 713–14, 262 A.2d 48 (1970) (A plaintiff, injured when she stepped on a bottle that rolled out of an automobile in which she was riding, was not entitled to submit her case to the jury on the basis of *res ipsa loquitur.* The Court of Appeals noted that its analysis was not consistent with *Jesionowski.).*

**15.** Amtrak's reliance on *Stillman v. Norfolk & W. Ry. Co.,* 811 F.2d 834, 837 (4th Cir.1987) to support its *res ipsa loquitur* argument is not persuasive. Stillman was operating a forklift when it ceased operating. Stillman then placed himself under the blades and attempted to disengage a chain from them. The blades fell on him, injuring him. *Id.* at 836. The Fourth Circuit Court of Appeals held that the doctrine of *res ipsa loquitur* was inapplicable because Stillman exercised some degree of control over the forklift and its blades. The analysis in *Stillman* is not consistent with those of other courts which have considered similar questions. *See, e.g., Dugas v. Kansas City S. Ry. Lines,* 473 F.2d 821, 826 (5th Cir.1973) (Freight car door fell on employee, a car-cleaner, when he opened the door to clean the car. "[T]he teachings of *Jesionowski* mandate the rejection" of the railroad's argument "that by opening the boxcar door Dugas was at least in partial control of the instrumentality whence came the injuries, thus defeating the application of the res ipsa doctrine."); *Robinson v. Burlington N. R.R.,* 131 F.3d 648, 653 (7th Cir.1997) ("In *Jesionowski,* which remains the

## C. Proximate Cause—Contributory Negligence

As an alternative ground for its decision, the circuit court concluded that there was "no evidence that an appearance of the baggage cart on the tracks was the actual and proximate cause of Plaintiff's injuries." As we have discussed above, the doctrine of proximate causation plays no role in determining whether a railroad is liable for an employee's injuries. The applicable test in a FELA case is " 'whether . . . employer negligence played any part, even the slightest, in producing the injury.' " *McBride,* 131 S.Ct. at 2638 n. 2 (quoting Rogers, 352 U.S. at 506, 77 S.Ct. 443). In this context, two decisions, both of which *McBride* indicates were correctly decided, are instructive in demonstrating how attenuated the chain of causation may be in a FELA action.

In *Richards v. Consol. Rail Corp.,* 330 F.3d 428, 431, 437 (6th Cir.2003), a train stopped suddenly because of an apparent malfunctioning of the brake system in a car. Plaintiff, the conductor, was responsible for inspecting each car's brake system in these situations, a process that required him to crouch down and examine the underside of each car. While so doing, he slipped and injured his back. *Id.* at 431. The District Court granted the railroad's motion for summary judgment because "the subsequent slip and injury bears too tenuous a connection" to the brake failure. *Id.* The Circuit Court of Appeals reversed, finding that "[c]ourts . . . should focus on whether a reasonable jury could conclude that the [railroad's negligence] played *any* part, even the slightest, in bring about the plaintiff's injury." *Id.* at 437 (emphasis in original).

In *Norfolk Southern Ry. Co. v. Schumpert,* 270 Ga.App. 782, 783–86, 608 S.E.2d 236 (2004), a part of a train car's coupling

---

governing precedent, the Supreme Court emphasized that, in the context of FELA cases, federal courts [are] to avoid 'conceptualistic' interpretations of the *res ipsa loquitur* doctrine that might unduly restrict the 'jury's power to draw inferences from facts.' ").

Setting aside whether *Stillman* or *Dugas* is more consistent with *Jesionowski,* Page had no control whatsoever over the baggage cart until he removed it from the track.

system called a "knuckle" became accidently disengaged through the negligence of Lusk and fell to the ground. Schumpert was nearby and came over to assist her. Knuckles weigh 90 pounds and replacing one is a job for two persons. Knowing that Lusk was pregnant, Schumpert undertook to perform the task by himself. He picked up the knuckle to return it to its proper place and, in so doing, injured his back. *Id.* at 783, 608 S.E.2d 236. The Georgia Court of Appeals held that sufficient causation existed because the "negligence that led to the fallen knuckle can be seen as playing a part, 'even the slightest,' in producing Schumpert's injury." *Id.* at 786, 608 S.E.2d 236.

In its brief, Amtrak presents a variation of the proximate cause argument made by the employers in *Richards* and *Schumpert.* Specifically, Amtrak contends that Page's "decision to jump from the platform ... was the sole cause of his injury." While Amtrak asserts that Page acted unreasonably in dropping drop down from the platform, " 'it can nearly always be said that with greater care the employee could have avoided an accident that occurred under circumstances over which he was likely to have greater control than his master.' " *Miller,* 159 Md.App. at 136, 858 A.2d 1025 (quoting Reginald Parker, *FELA or Uniform Compensation for All Workers,* 18 LAW & CONTEMP. PROBS. 208, 209 (1953)). Contributory negligence may reduce, but does not bar, recovery under the FELA. *Norfolk S. Ry. v. Sorrell,* 549 U.S. 158, 166, 127 S.Ct. 799, 166 L.Ed.2d 638 (2007) ("Under ... FELA, however, an employee's negligence does not bar relief but instead diminishes recovery in proportion to his fault.").

## IV. Conclusion

Viewing the facts in a light most favorable to the nonmovant, we hold that there is evidence from which a fact finder could conclude that Amtrak was negligent and that Amtrak's negligence played *a part* in producing Page's injuries. Whether Page acted unreasonably in dropping down from the platform instead of using the stairs, and the degree to which Page's fault, if any, contributed to his injuries, are

questions for the jury. "Reasonable care and cause and effect are as elusive [in FELA cases] as in other fields. But the jury has been chosen as the appropriate tribunal to apply those standards to the facts of these personal injuries." *Bailey,* 319 U.S. at 354, 63 S.Ct. 1062.

**THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY IS VACATED AND THIS CASE IS REMANDED TO IT FOR FURTHER PROCEEDINGS.**

**APPELLEE TO PAY COSTS.**